## Blackburne's Appeal.

*Assignee for Creditors, Liability of for Negligence and want of due Diligence.—Exemption Law waived by omission to reserve it in Assignment.*

1. An assignee suffered the real estate of his assignor to be sold, subject to the mortgage of a building association for $1000, as if it were a valid encumbrance for the whole amount, when there was legally due upon it, after deducting the payments made upon stock, only $430. The auditor, upon his account, surcharged him with the difference ($570), and with interest thereon, on the ground of negligence in not ascertaining the state of accounts between the assignor and the association before the sale. *Held*, that the surcharge was proper.

2. Where the mortgage was executed in 1856, the law at that date was the law of the contract, and the Act of 1859, in reference to building associations, could not apply to it.

3. The $300 exemption, under the Act of 9th April 1849, is waived by an assignor, unless expressly reserved in the deed of assignment; hence, where there was no such reservation in an assignment, and the assignor set apart to the assignee $300 worth of household goods, he was properly surcharged to that extent by the auditor upon settlement of his accounts.

CERTIORARI to the Common Pleas of *Philadelphia county*.

This was an appeal by Francis Blackburne from the decree of the court confirming the report of the auditor appointed to audit, settle, and adjust his account as assignee of Thomas Blackburne and Elizabeth his wife, in trust for the benefit of creditors.

The assignment was made January 21st 1859, and was followed in due time by an inventory and the giving of security, as required by the Act of Assembly. In obedience to a citation, an account was filed February 20th 1860, which was referred to Wm. J. McElroy, Esq., as auditor, by whom an elaborate report was filed, disposing of all the questions that were presented for his consideration, among which were the following:—

1. The assignee claimed a credit of $1100, loss on sale of real estate, which, in his account, as filed, took the form of a debt of $900, the actual proceeds of the house and lot of ground on Christian Street. The property was sold at the Exchange, by the assignee, for $3400—the terms of sale being that $2500 might remain on mortgage if desired. This allowance was objected to, because of the alleged negligence of the assignee in conducting the sale. The auditor, after hearing the testimony, was of the opinion that the property had realized as much as it was worth, and decided against this objection. Another objection was made to this allowance on the following grounds:—

The real estate was, at the time of its conveyance to the assignee, encumbered by two mortgages,—the first to the Franklin Fire Insurance Company, on which there was due $1500, and

[Blackburne's Appeal.]

as to which there was no question; and the second to the Robert Flanagan Building Association, for the sum of $2000. This latter mortgage was one of the usual building association mortgages. The evidence showed that, on the 19th February 1855, the association made the original loan to Catharine A. Letourneau, the nominal amount being $2000. The premium bid for priority of loan being 35 per cent., was first deducted, so that the actual amount loaned was $1300. On the 28th of August 1855, Mrs. Letourneau applied to the association to remove the mortgage from her property, and accept in its place a mortgage on the property of Mr. Blackburne, the assignor. On the 6th September 1855, the association directed this to be done, and, on the 26th September 1856, the present mortgage was executed by Mr. Blackburne. What the arrangement was between him and Mrs. Letourneau, did not appear; but the whole amount advanced by the association in the matter was the $1300. At the time of executing this mortgage, the assignor possessed fifteen shares of the capital stock of the association; ten of these he then transferred to the association, by whom they are still held as collateral security for the loan. On these ten shares he had previously paid to the association the sum of $110. The remaining five shares he held until the 30th September 1858, and then sold them, having paid until that time the monthly dues upon them at the rate of $5 per month. On the ten shares, transferred as above, he continued to pay dues at the rate of $10 per month, and also paid interest, calculated on the nominal amount of the loan, $2000, at the rate of $10 per month; so that in dues and interest (exclusive of the five shares sold by him) he had, at the time of the execution of the deed from the assignee to the purchaser (viz., 1st October 1859), paid into the association, in dues and interest, the sum of $1070. The assignor also paid to the association the monthly sum of $7.50 for interest on the mortgage of $1500 held by the Franklin Fire Insurance Company, which sum is credited in his account as "ground-rent."

The appraisers stated, in relation to this mortgage, that they were informed that there was due and unpaid on it an amount not less than $1000. The real estate was sold and conveyed by the assignee subject to it as a mortgage for $1000. The auctioneer testified as to the terms of sale,—that he sold the property clear of all encumbrances, with the statement that there were two mortgages against it,—one of $1500, held by the Franklin Fire Insurance Company, and one of $1000, held by the Robert Flanagan Building Association, which might remain, if desired by the purchaser; that these were the conditions of sale made known to bidders at the time of putting up the property. In accordance with these conditions, an allowance of

3 Wr.—11

[Blackburne's Appeal.]

$2500 was made to the purchaser on his bid, he taking the property subject to the mortgages.

On this state of facts, the counsel for creditors asked that the assignee account for the difference between the sum of $1000 allowed by him to be deducted from the purchaser's bid, and the actual amount due on this mortgage at the time of the execution of the deed for the property.

The auditor made a calculation of the amount due upon this mortgage, based upon the decisions in Kupfert *v.* Guttenberg Association, 6 Casey 465; Hughes' Appeal, 6 Casey 471; Association *v.* Reid, 16 Leg. Intel. 157, and kindred cases; holding that the modification of these authorities by the recent decision in The Association *v.* Sutton, 17 Leg. Int. 164, 11 Casey 463, did not affect the present inquiry; that though the assignee was not bound to treat the assignor's payments on the stock as made in reduction of the mortgage, yet he had the right to do so; and it was evident that he assumed the latter position.

By this calculation, it appeared that there remained due by the assignor to the association, on this mortgage, at the time of the execution of the deed by the assignee, the sum of $430.

| | | |
|---|---:|---:|
| The amount bid for the property was . . . . | | $3400 |
| Deduct mortgage to Franklin Fire Insurance Company . . . . . . . | $1500 | |
| Deduct mortgage to Robert Flanagan Building Association . . . . . . . | 430 | $1930 |
| Proceeds of sale, which the assignee should have received . . . . . . . . . | | $1470 |
| The appraised value of the property was . . . | | $2000 |
| Proceeds of sale as above . . . . . . | | 1470 |
| Loss sustained on the sale . . . . . . | | $530 |

For which amount only a credit was allowed to the assignee.

2. The assignee also claimed credit for the sum of $289.20, the appraised value of the furniture and household goods, allowed to and retained by the assignor under a claim of exemption by virtue of the Act of 9th April 1849, which was objected to by the creditors. The deed of assignment conveyed to the assignee " all the estate, real, personal, or mixed, whatsoever and wheresoever the same may be, which belong to the said Thomas Blackburne, known as McKeon," upon trust, " that he will at public or private sale, sell and dispose of the said estate, real, personal, or mixed, to the most advantage, and make, execute, seal, acknowledge, and deliver good and sufficient deeds and title therefor to

the purchaser or purchasers." There was no reservation whatever in the deed. The auditor refused to allow this credit.

The 3d, 4th, and 5th credits claimed in the account were allowed without objection. A credit of $12.50, for fees paid to protho-notary, was reduced by the fee bill to $1.33; a claim of $14.50, for filing, publishing, recording, and docketing the account, allowed; a credit for $100, paid to appraisers, was reduced to $14; auctioneer fees and counsel fees allowed; accountant's commissions were reduced from $90 to $22.50; and he was charged with interest on all sums which he had received or should have received.

Exceptions were filed by the accountant to so much of this report as surcharged him on account of the building associa-tion mortgage, and the item of $289.20, the value of furniture claimed by the assignor under the Exemption Law; and to the decisions of the auditor relative to the credits claimed for protho-notary's and appraiser's fees, the reduction of his commissions, and the charges for interest on moneys which he averred never were in his possession, and which he had a right to appropriate to his own lien. The court below dismissed the exceptions, and confirmed the report, whereupon the accountant removed the case into this court, and assigned for error the dismissing of the exceptions and the confirmation of the report of the auditor.

*John P. Owens* and *John A. Owens*, for appellant.—The sur-charge on account of the mortgage on the Christian Street property was erroneous, because, if there was any error, it was committed after a faithful endeavour to do his duty: Burrill on Assignments 423, 504; Hecht *v.* Porcher, 1 Strobhart's Equity 170; McCubbin *v.* Cromwell, 7 Gill & Johns. 157. The mort-gage as per the record was for $2000; the appraisers returned that $1000 at least had been paid on account. There was no receipt, for, as these corporations do business, they give none. This uncertainty was increased by the Act of April 12th 1859, which rendered more doubtful the question of the real value of such mortgages. He did the best he could do under the circum-stances, viz., offer the property clear of encumbrances, in accord-ance with the suggestion in Adams *v.* Haines, 7 Watts 310. Besides, this was the first, and not the final account of the assignee, and if chargeable at all, it is for the ten shares of stock in the building association, upon which the payments sought to be credited on the mortgage were really paid, and could be claimed from the association for a future account: Litchfield *v.* White, 3 Sanf. Sup. Court, N. Y. Rep. 845; N. A. Building Asso-ciation *v.* Sutton, 11 Casey 463. See also Shaeffer *v.* Child, 7 Watts 84.

2. There was no reservation in the assignment of the property,

[Blackburne's Appeal.]

exempt from levy and sale on execution, because Boker *v.* Cruik-shank, 1 Philadelphia Rep. 493, held that such a reservation rendered the assignment void.   But the right to this property was in the assignor at the time, and the assignee possessing the same rights, and bound by the same equities as the assignor, never took the exempt property : Owen on Assignments 235 ; 2 Vesey & Beames 13 ; 9 Vesey 100 ; 2 Id. 255 ; Id. 286 ; 2 Atk. 562 ; 2 Shaw 103 ; 1 Vesey, Sr. 331.   Every contract is subordinate to the laws of the land, and the courts have always construed this act in the most humane spirit : Yelverton *v.* Burton, 2 Casey 351 ; Hawley *v.* O'Donnell, 6 Id. 262 ; Knabb *v.* Drake, 11 Harris 400 ; Bowyer's Appeal, 9 Id. 213.   But Mulford *v.* Shirk, 2 Casey 473, expressly recognises the reason of this rule.

3. The payments which were reduced by the auditor had been made in good faith to the officers, in conformity with the usual practice under the fee bill.

4. The reduction of the commissions below five per cent. was improper : 9 S. & R. 209 ; 1 Baldwin 380.

5. The surcharge of interest on the money in his hands was inequitable.   The accountant held two liens against the assignor, amounting to $811.84, and was credited for expenditures, exclusive of commissions, to the amount of $248.25, making $1060.09, which he had a right to deduct from the fund.   There was, therefore, no necessity for a separate account of the money.

The charge of interest on the goods retained under the Exemption Law will of course pass away with the principal, but if not, how is interest to be estimated on *furniture?*   The surcharge is in the nature of damages, and can interest be charged on the items which induced it ?

No surcharge is proper where an assignee has used due diligence and carefulness in the management of the trust : Burrill on Assignments 504 ; Nyce's Est. 5 W. & S. 254 ; Harden *v.* Pearson, 1 Eden. 145 ; De Mannville *v.* Crompton, 1 Vesey & Beames 354 ; Bruere *v.* Pemberton, 12 Ves. 386.

Tried by the act regulating auditors' fees (7 S. L. 228), the auditor is only entitled to $32, instead of $119.57, as there were only sixteen meetings, most of which were only *pro formâ*.

*F. Carroll Brewster* and *Geo. Junkin*, for creditors, relied on the authorities cited by the auditor in support of his decision.

The opinion of the court was delivered, May 6th 1861, by

THOMPSON, J.—It is very conclusively shown, by the auditor's report, that the assignor, in this case, might have saved to the creditors the sum of $570, if he had carefully examined the state of the accounts between his assignee and the Robert Flanagan Building Association.   Instead of the sum of $1000 due on

[Blackburne's Appeal.]

the mortgage, subject to which he allowed the Christian street property to be sold, he could certainly have ascertained that after applying the payment on stock, there would only be due on it the sum of $430, adopting the basis of calculation sanctioned by this court in Kupfelt v. Guttenburg Association, 6 Casey 465; Hughes' Appeal, Id. 471, and Association v. Reed, 16 Leg. Int. 157.   It is hardly to be doubted but that it would have sold for as much as it did, if the encumbrance had been thus stated. I cannot see how he can be excused from a surcharge to this extent, merely upon the evidence that the appraisers so estimated it.   But, be this as it may, the auditor has found negligence in this matter, and we do not see that he erred in so doing.

But it is contended that the rule of decisions in the cases cited will not now apply—that the Act of Assembly of the 12th of April 1859, relating to building associations, prevents this.   The auditor was of opinion that, as the mortgage was executed in 1856, the Act of 1859 did not apply; that it was not to have a retrospective operation; that the law existing at that date was to be the law of that contract.   In this he was right, as will be seen by the cases of Reiser v. The Wm. Tell Association, Appeal of the Premium Fund Association, and Denny v. The Philadelphia Building Association, decided at this term; and further remark on this point is therefore unnecessary.

Nor do I see any error in the interest surcharged.   Diligence would have saved all this, and this is what the law enjoins upon trustees of every description.   Responsibility is but a reasonable penalty for negligence, and I believe it to be a rule without an exception that it is always imposed where injury ensues from it. There was no error committed by the auditor in his treatment of this subject of controversy.

I am unable to discover, from anything which has been determined in this court, or from the analogies of the law, any reason for holding that one who assigns all his property, real and personal, for the benefit of his creditors, without any reservation of the sum exempted by law to a debtor in execution, is not to be held as waiving his right to such exemption.   We have held in numerous cases, which need not now be referred to, that a debtor has power to waive such exemption, and in more than one of them the question was as to the effect of such waiver on the rights of creditors.   The question we think is settled.

A voluntary assignment for the benefit of creditors in its just aspect is certainly nothing more nor less than a contract—a transfer in trust for a nominal consideration, and the further consideration of a distribution of the proceeds of the assigned property among all the creditors.   If a transfer were to one creditor of all the debtor's property in payment of a debt, it would enter into the mind of no one that all did not pass.   Cer-

tainly nothing else can be inferred, where it is in the same general and unrestricted form, for the benefit of all.

The Act of the 9th of April 1849, by express terms only allows the exemption in cases of execution, and on warrants of distress for rent. These are compulsory process, and there it is allowed if demanded; but silence may waive it. It does not apply to a sale on a mortgage as against the mortgagee: McAuley's Appeal, 11 Casey 209. The sale being on execution from the judgment on the mortgage-bond does not alter the case: Id. All this proceeds from the nature of the original transaction. The mortgage being a voluntary pledge, the debtor is not entitled to a drawback to the extent of the exemption as against it. So is it with his assignment. I have known assignments where the whole property was of no greater value than $300. It would be quite a farce, if, after the recording of such assignment, inventory of property taken, appraisement bond given, and the goods turned into money, the assignor could claim the proceeds for the benefit of himself and family.

It was held in Mulford *v.* Shirk, 2 Casey 473, that the reservation in the assignment of the $300, exempt by law, did not avoid the assignment. The reason for this was briefly said to exist in the fact that the law created the reservation, not the assignment, and hence it was not fraudulent under the statute of 1st Eliz. All that was meant by the decision was this. In that case it was clear that the debtor did not waive a right which he could assert against any compulsory process, either on part of the assignee or any creditor. But in the case in hand this does not appear. The contrary appears. There was no intention manifested to retain, and as it is a presumption of law that the assignor knew its provisions in favour of debtors, his act in assigning *all* his property must be taken according to its legal import—an assignment without reservation—and the property having passed to the assignee, it could not afterwards be reclaimed. We have constantly held in these cases in accordance with the rule of common law, that he who claims an exemption or a privilege, must show a performance of whatever is necessary to bring his case within the exemption or privilege; the privilege being exceptional, it requires the performance of the terms upon which it is to be enjoyed.

From these views it will be apparent, and it is our opinion, that the assignee did wrong in setting apart the household furniture to the assignor after the appraisement, and that the surcharge to that extent was proper.

We see nothing else in the exceptions requiring notice. Indeed, the auditor's report is throughout a very complete vindication of the principles assumed in it.

Decree of the Common Pleas affirmed at the costs of the appellant.