Commonwealth ex rel. William J. Roney v. Charles F. Warwick, Mayor of the City of Philadelphia, James L. Miles, President of Select Council; Wencel Hartman, President of Common Council, and Messrs. Thomas L. Hicks et al., Members of the Councils of the City of Philadelphia, Appellants.

*Statutes—Expository statutes—Constitutional law—Conflict between the legislative and judicial branches of the government.*

The legislature cannot pass an expository act to compel the courts for the future to adopt a particular construction of a previously enacted statute.

*Statutes—Acts of February 2, 1854, sec. 46, and April 18, 1867—Receiver of Taxes for the City of Philadelphia—Public officers—Elections—Municipalities.*

The act of April 18, 1867, P. L. 1299, which declares that the words " the next city election " in the act of February 2, 1854, sec. 46, P. L. 44, shall be construed to mean " the election at which the qualified voters would in accordance with existing laws elect a successor in office had no vacancy occurred therein," is not within the power of the legislature to enact, inasmuch as it is an attempt upon the part of the legislature to usurp the judicial powers of the court.

Where a vacancy occurs in the office of receiver of taxes for Philadelphia, and the vacancy is filled by councils in accordance with the provision of the act of February 2, 1854, the incumbent cannot hold for the unexpired balance of his predecessor's term of office, but only until " the next city election," even although at such an election the voters would not ordinarily under existing laws vote for a receiver of taxes.

Argued Oct. 23, 1895. Appeal, No. 39, Jan. T., 1896, by defendants, from judgment of C. P. No. 3, Phila. Co., March T., 1895, No. 1273, for plaintiff on petition for mandamus. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed. MITCHELL, J., dissents.

Petition for mandamus.

From the record it appeared that on February 21, 1893, John Taylor was elected receiver of taxes of the city of Philadelphia for a term of three years, commencing the first Monday of April, 1893. Taylor died on January 5, 1895. On January 9, 1895, the select and common councils, in joint session,

elected William J. Roney, the relator, receiver of taxes to fill the vacancy caused by the death of John Taylor. The selection of the said councils was for the unexpired term of John Taylor, until the first Monday of April, 1896. The oath of office was administered to William J. Roney, and his bond was approved as required by law. On February 19, 1895, the electors of the city voted for candidates for the office of receiver of taxes for the full term of three years, beginning with the first Monday of April, 1895. The relator, receiving the highest number of votes, was returned as elected. In pursuance of the said election, on March 20, 1895, the relator presented himself before Edwin S. Stuart, mayor of the city, for the purpose of subscribing to the oath of office; the mayor refused to administer the oath on the ground that as the councils of the city had selected William J. Roney receiver of taxes for the unexpired term of John Taylor, deceased, and as that term would not expire until the first Monday of April, 1896, there was no vacancy to be filled by the election held on the 19th day of February, 1895; and as the oath of office for that term had been duly administered to William J. Roney, it was not incumbent upon the mayor to administer another oath to the relator. Subsequently, Charles F. Warwick, mayor of the city, also declined to administer the oath, for similar reasons. The councils of the city also refused to approve the bond of William J. Roney for the full term of three years from the first Monday of April, 1895, because they had already approved the bond of William J. Roney for the unexpired term of John Taylor, deceased, and that term would not expire until the first Monday of April, 1896. Roney, on May 25, 1895, filed his petition in the court of common pleas for Philadelphia county, setting forth these facts and praying for a writ of alternative mandamus against Charles F. Warwick, mayor of the said city, and the select and common councils, directing the said mayor to administer to the said petitioner, William J. Roney, the oath of office as receiver of taxes, and commanding the councils of the said city to approve the bond of the said William J. Roney as receiver of taxes. The writ of alternative mandamus was allowed, returnable the first Monday of June, 1895. On June 13, 1895, the respondents made return to the writ of alternative mandamus, setting forth the reasons why the mayor had not administered

the oath of office to William J. Roney, and why the councils of the city refused to approve his bond. On September 28, 1895, after argument upon the said petition and return, the court entered judgment in favor of the relator.

Defendants appealed.

*Error assigned* was entry of judgment as above.

*James Alcorn,* assistant city solicitor, *F. L. Wayland* and *John L. Kinsey,* city solicitor, with him, for appellants.—The act of April 18, 1867, P. L. 1299, will be given effect as an amendment or supplement to the 46th section of the act of February 2, 1854, sec. 56 : Titusville Iron Co. v. Keystone Oil Co., 122 Pa. 627 ; East Grant Street, 121 Pa. 596.

The act of April 18, 1867, even as an expository or declaratory statute will be given effect as to future cases : O'Conner v. Warner, 4 W. & S. 223 ; act of June 16, 1836, P. L. 696 ; act of April 28, 1840, P. L. 474 ; Lamberton v. Hogan, 2 Pa. 22 ; Haley v. Phila., 68 Pa. 45 ; Denny v. West Phila. Saving Fund Assn., 39 Pa. 154 ; Blackburn's App., 39 Pa. 160 ; 23 Am. & Eng. Ency. of Law, 343 ; Dash v. Van Kleeck, 7 Johns. N. Y. 498 ; Dequindre v. Williams, 31 Ind. 450 ; Municipality No. 1 v. Wheeler, 10 La. 747 ; Sutherland on Statutory Constructions, 306 ; Potter's Dwarris on Statute and Constitutions, 628.

It will be seen that a distinction is drawn between an expository statute which attempts to interpret the law as it is or was, and those statutes which merely declare or define what the law shall be. The latter are given the force and effect of new enactments. They apply only to future cases and enact what the law, in the future, shall be.

It is suggested that the act of 1867 is within legislative power. It does not direct the judiciary as to how the act of 1854 shall be interpreted, as to past cases, nor does it change the decision of the court as to the meaning of the 46th section of the act of 1854. It declares that in the future the words " the next city election " shall receive a certain construction. That does not encroach upon the judicial function ; it is legislation acting only on future cases.

The current of authority gives effect to a legislative construc-

tion, even though plainly contrary to the terms of the act construed, as if it were a new enactment changing the old law. Because the legislature enacted that the words " the next city election " should be construed to mean, as the learned judge put it, " not the next, but the next to one," he decides " that it is beyond the legislative power to thus distort language." The cases referred to of O'Conner v. Warner, Reiser v. William Tell Saving Fund Association, and Haley v. City of Philadelphia, are opposed to this view, so far as future cases are concerned.

The term " existing laws," in the act of 1867, means the law in existence at the time the act is called into force : Kugler's App., 55 Pa. 123 ; In re Vernon Park, 163 Pa. 70.

*M. J. O'Callaghan,* for appellee.—That the relator is entitled to a peremptory writ to enable him to perfect his title to this office is well settled : Com. v. Councils of the City of Pittsburg, 34 Pa. 496 ; Com. v. Fitler, 136 Pa. 129.

The act of April 18, 1867, will not be given effect as an amendment or supplement to the 46th section of the act of February 2, 1854, because it violates the constitution and undertakes to perform a judicial duty : In re East Grand Street, 121 Pa. 596.

The act of April 18, 1867, as an expository or declaratory statute, cannot even be given effect to in future cases: Greenough v. Greenough, 11 Pa. 489; Tell v. Saving Fund Assn., 39 Pa. 137 ; Hare on Constitutional Law, 846 ; Cooley on Constitutional Limitations, 114, 5th ed.; Ordronaux on Constitutional Legislation, 377 ; Miller in Lectures on Constitution of the United States, 355.

OPINION BY MR. CHIEF JUSTICE STERRETT, Nov. 8, 1895 :

It was unavoidable in their earlier administration that conflict should have arisen between the legislative and judicial branches of our government. The form of government was new, and the exact limitations of duty and power were imperfectly understood. Even their co-ordination of power was doubted by some : Eakin v. Raub, 12 S. & R. 330 ; and the feeble resistance offered by the judiciary naturally encouraged encroachments by the legislature. The mischief which resulted

became so great that this court was compelled in Norman v. Heist, 5 W. & S. 171, and Bolton v. Johns, 5 Pa. 145, to take a stand in assertion of the power which the constitution had conferred. "The functions of the several parts of the government are" said GIBSON, C. J., in De Chastellux v. Fairchild, 15 Pa. 18, "thoroughly separated, and distinctly assigned to the principal branches of it, the legislative, the executive and the judiciary, which within their respective departments are equal and co-ordinate," and hence the principle was declared and has become firmly established in a bead-roll of cases that "the legislative direction to perform a judicial function in a particular way would be a direct violation of the constitution:" O'Conner v. Warner, 4 W. & S. 223. Tested by this principle, the act of 1867 is not legislative but expository in its character. It does not purport to amend, alter, or change the language of the act of 1854. It offers no substitutionary clause but declares what that act "shall be construed to mean." It is, on its face, a legislative mandate to the courts to perform their judicial function in a particular way. The appellant insists that this court has recognized an exception to the rule of expository prohibition in cases of doubtful construction. There are, it is true, dicta to that effect; but no precedents have been cited in which it was made the basis of decision. In O'Conner v. Warner, supra, it was placed on the ground that no injury had been done the parties. In Lambertson v. Hogan, 2 Pa. 22; Reiser v. Sav. Fund Assn., 39 Pa. 137; Denny v. Sav. Fund Assn., 39 Pa. 154; Blackburn's App., 39 Pa. 160; Haley v. Phila., 68 Pa. 45, and Titusville Iron Co. v. Keystone Oil Co., 122 Pa. 627, certain expository statutes were denied retroactive effect; while, In re East Grant Street, 121 Pa. 596, an act was held invalid so far as it undertook to declare the meaning of a prior act; but, so far as it provided a substitutionary clause, was effective in repeal. Nor is it apparent how an exception can be reconciled with the theory of exclusive legislative and judicial functions. Its existence is an invitation to and has resulted in many attempted encroachments on the province of the latter; and, if it extend to cases like the present, has no limit in its application and puts in the power of the legislature the abrogation of the principle to which it is said to be an exception.

But concede the legislative power to pass expository acts;

its exercise was said in Haley v. Phila., supra, to be limited to statutes whose construction is "really doubtful." "It would be monstrous" said Mr. Justice SHARSWOOD, "to maintain that where the word and intention of an act were so plain that no court had ever been applied to for the purpose of declaring their meaning, it was therefore in the power of the legislature by a retrospective law to put a construction upon them contrary to their obvious letter and spirit." "The word and intention" of the act of 1854 are so plain that there is no room for construction, and therefore no occasion for the passage of an expository statute existed. It declares, so far as relates to the subject under consideration, that "whenever any elective officer of said city shall die, or become incapable of fulfilling the duties of his office, his place, except where other provision is made for filling the vacancy, shall be filled by a joint vote of the city councils until the next city election and the qualification of the successor in office; Provided, that such vacancy shall exist at least thirty days before the next city election, otherwise such vacancy shall be filled at the next election thereafter;" while the act of 1867 declares that it "shall be construed to mean," what is obviously contrary to its "letter and spirit," that such appointee shall hold during the unexpired term.

It was also contended that "as the constitution prescribed no form or order into which the legislative expression was to be cast," neither form nor order were material, and this court should therefore give effect to the "purpose" of the act of 1867. But the "purpose" of every statute as of all other instruments must be gathered from the language used; and this act undertakes to give a new and final interpretation to the act of 1854, and direct the courts to adopt that interpretation in all cases which come before them. Obedience to this order is an abandonment of a principle which is vital to the preservation of our system of government. "As the legislature cannot," says Judge COOLEY in Const. Lim. 114, "set aside the construction of the law already applied by the courts to actual cases, neither can it compel courts for the future to adopt a particular construction of a law which the legislature permits to remain in force. One of the fundamental principles of all our governments is that the legislative power shall be separate from the

judicial. If the legislature would prescribe a different rule for the future from that which the courts enforce, it must be done by statute, and cannot be done by a mandate to courts which leaves the law unchanged, but seeks to compel the courts to construe and apply it, not according to the judicial, but to the legislative judgment."

The practical effect of the act of 1867 in the present case would be to compel this court to "construe" the expression, "the next city election," used in the act of 1854, to mean not the "next" but the "next but one." It was clearly beyond the legislative power to thus usurp judicial functions, or to distort language.

Judgment affirmed, and it is now ordered that a writ of peremptory mandamus be issued, as prayed for in the petition, directed to the defendant Charles F. Warwick, mayor of the city of Philadelphia, commanding him to administer to the relator, William J. Roney, the oath of office of receiver of taxes for the city of Philadelphia, as required by law, and to the said defendants, members of councils of the city of Philadelphia, commanding them to consider the form and sufficiency of the bond required to be entered by said relator for the city of Philadelphia, and that the costs be paid by the defendants.

DISSENTING OPINION BY MR. JUSTICE MITCHELL:

I dissent from this judgment as an unprecedented and unwarranted invasion by the judiciary of the legislative authority. Declaratory and expository acts have been in common use in Pennsylvania from colonial days. Since the adoption of the constitution of 1790 there have been scores if not hundreds of them, and if we include those in which the phrase "shall not be construed" etc. has been used to introduce what are practically provisos in the same act, their name will be legion. Just half a century ago Justice ROGERS in delivering the opinion of this court in Lambertson v. Hogan, 2 Pa. 22, said, "'it shall not be construed' is now the usual formula." It has continued as a common legislative formula from that day to this, in frequent use, well understood, and never heretofore questioned. In all the long array of statutes and decisions for a hundred years since 1790, not a single case has been found by the diligence of counsel or of court in which a declaratory act has

been held invalid as an invasion of the judicial province as to rights arising after its passage.

That the law of the land by which the constitution guarantees that the rights of the citizen shall be determined, means the law as it was at the time those rights arose and became fixed, was early decided, and that the courts are bound to so hold notwithstanding a subsequent declaratory alteration of the law, has long been settled. But it is part of the judicial history of the country that a powerful minority party maintained for a long time that the co-ordinate executive and legislative branches of the government each had an equal right with the judiciary to put its own construction on the constitution, and abide by it, notwithstanding a different construction should be given by the courts. One of the most eloquent of them, John Randolph, expressed his convictions by the sardonic allusion that after the Book of Judges, came the Book of Kings. The doctrine that the judiciary were not authorized to declare any act of the legislature unconstitutional had its advocates in our own court, and will be found argued with all his usual vigor by GIBSON, J., in Eakin v. Raub, 12 S. & R. 330, 345. Whether he changed his views, or as many another judge has had to do before and since, merely acquiesced in and enforced settled adjudications in which he would not originally have concurred, I do not know, but he is now cited as the champion of the judicial prerogative. But the conflict which he referred to in describing the weakness of the judiciary, was that which I have mentioned, over the power of the courts to decide finally on all questions of constitutional rights, against the other departments of the government as well as between private citizens. It had no reference whatever to expository or declaratory acts as distinguished from any others. Here and there in our reports are some expressions especially by Justices ROGERS and LOWRIE adverse to giving any declaratory act a retrospective operation, and indeed hostile to all retrospective laws, though they are more than offset by the learned and broad-minded discussion of the subject by SHARSWOOD, J., in Grim v. Weissenberg School Dist., 57 Pa. 433. But even in Norman v. Heist, 5 W. & S. 171, and Bolton v. Johns, 5 Pa. 145, which are cited as the cases in which this court was compelled to take a stand in assertion of the power which the constitution had conferred, it must not be

overlooked that the laws in question were sustained, and the "stand" of the court was confined to giving them a prospective construction. In Bolton v. Johns, the question was upon the validity of a mechanic's lien filed by a contractor in 1843. The courts had uniformly held that there could be no lien under the act of 1836 for any work or materials furnished by contract. By the act of April 16, 1845, P. L. 538, it was "hereby declared that the provisions of the act of 1836 according to the true intent and meaning thereof, extend to and embrace claims . . . . under any contract or agreement . . . . *and the provisions of the said act shall be so construed.*" This court held that the rights of a purchaser in 1843 must be determined by the law as then declared and that the act of 1845 could not retrospectively make the lien good against him, but as to the future, and even between the parties who had contracted prior to its date, it was " clearly constitutional." GIBSON, C. J., saying " We might perhaps make this case an exception to the explanatory act, as not being within its spirit, but . . . . it seems to be more frank and not less courteous to meet the question on its constitutional ground. Besides, as the act is undoubtedly constitutional in a particular view of the facts" (if the purchaser had not yet paid value) " the plaintiff has a right to go before a jury on the evidence of them."

So in Greenough v. Greenough, 11 Pa. 489, the act of 1848 had declared that a will executed by the testator's mark should ": be deemed and taken to be valid." The act of 1833 had been construed differently but this court held the expository act good as to future cases, GIBSON, C. J., saying, " Conceding the right of legislative interpretation in the first instance because it has prevailed too long to be disputed, we can pronounce' the act of 1848 to be exclusively prospective without disturbing titles."

Without entering on an elaborate review of the cases here, I may say that I have carefully examined every case and every citation, besides many others not brought forward by counsel or the court, and I state the result with confidence, that there is not an instance in our books where a declaratory act has been held unconstitutional as an invasion of the judicial province when applied to rights arising subsequently, but that every case and every text writer, without an exception, limits the

principle of the invalidity of expository and declaratory acts, to rights already fixed at the date of the statute's passage.

On the contrary such acts have been uniformly sustained as amendments or changes of the law that the legislature was competent to make, and having the authority, the form in which it should be exercised is exclusively within the legislative discretion. In the last case before this court on that subject, Titusville Iron Works v. Keystone Oil Co., 122 Pa. 627, the law was thus clearly and accurately stated by our brother WILLIAMS, "Expository statutes, and statutes directing the courts what construction should be given to previous legislation, were not uncommon prior to 1874, and the courts while pronouncing all such legislation to be judicial in its character and void as to any retroactive effect intended, yet sought to give effect to the legislative will, however expressed, as to future cases. As the constitution prescribed no form or order into which the legislative expression was to be cast, the court sought to give effect to the purpose however expressed." That is the precise doctrine for which I contend in this case. The present constitution requires certain forms for amendatory statutes, and under them it will probably be difficult if not impossible to frame a merely declaratory act, but with that question we are not now concerned; the act of 1867 must be judged by the constitution as it then was, and its operation in the present case is entirely prospective. By all the precedents it was applicable and valid.

A distinction is now made between expository acts, as to whether the meaning of the act expounded is "really doubtful." If it were material it would not be difficult to show that whether the expression "next city election" in the act of 1854 meant the next election of any kind or the next election at which the office in which the vacancy occurs was to be filled, was much more doubtful than the questions in many other acts that this court has sustained, as for example in Bolton v. Johns and Greenough v. Greenough, in both of which the declaratory acts required the courts to say the acts expounded meant just what this court had already said they did not mean, yet the acts were held valid exercises of the legislative power as to future cases. The act of 1867 recites "whereas doubts have arisen" etc. It is in the province of courts to say that such doubts were not

well founded, but not that they did not in fact exist. Every year this court decides more than a hundred cases by per curiam opinions which indicate that the court unanimously consider them too free of doubt to require any extended discussion, but that does not alter the fact that a hundred or more lawyers, some very able and learned ones among them perhaps, entertained sufficient doubts to justify bringing them here.

But the question whether an act was "really doubtful" or not is wholly immaterial in the present case. It has never heretofore been applied except in considering the retrospective operation of statutes. In Lambertson v. Hogan, 2 Pa. 22, already cited, Justice ROGERS says "Explanatory acts must be construed as operating on future cases alone, *except where they are designed to explain a doubtful statute.*" And in Haley v. Phila., 68 Pa. 45, which is specially relied on for this point, the language of SHARSWOOD, J., quoted, shows that he was referring solely to retrospective construction, and this is further demonstrated by the next sentence in his opinion, "An expository act is destitute of retroactive force because it is an act of judicial power." It plainly did not occur to him, as it had not to any of his predecessors, that a declaratory act was not valid legislation to change the law for future cases, although it was put in the form of a direction to so construe a prior statute. In the present case if the act of 1867 instead of the phrase " the words 'next city election' shall be construed to mean" etc. had said " the words 'next city election' shall hereafter read 'next election for said office'" etc. there could have been no question of its validity as an alteration of the law, and I am unable to see any difference except in the very outside shell of the bark, between the two forms. I would therefore reverse this judgment.