## Bailey v. Waters, Auditor General.

*Snyder, Miller & Hull,* for plaintiff.

*William A. Schnader,* Attorney General, and *Harris C. Arnold,* Deputy Attorney General, for defendant.

HARGEST, P. J., January 8, 1932.—Thomas F. Bailey, President Judge of the Twentieth Judicial District, brings this mandamus against the Auditor General and State Treasurer to compel the payment to him of a salary of $12,000 a year instead of $9000 per year. The defendants filed a motion to quash the writ. The petition shows that the petitioner was elected and commissioned to serve as President Judge of the Twentieth Judicial District, consisting of the Counties of Huntingdon, Bedford and Mifflin, from the first Monday of January, 1926, until the first Monday of January, 1936, and that he duly entered upon the duties of his office. At the time the petitioner entered upon the duties of his office the judicial districts of the Commonwealth were designated by the Act of May 25, 1921, P. L. 1163, which created the Twentieth Judicial District, consisting of the Counties of Huntingdon, Bedford and Mifflin, and provided that it should have one judge learned in the law. The Act of July 1, 1919, P. L. 708, fixed the salary for judges of the courts of common pleas, learned in the law, in judicial districts having a population of 100,000 and less than 500,000, at $10,000. This act was repealed by the Act of May 16, 1929, P. L. 1780, which provides, in section four, that the salaries of judges learned in the law in judicial districts having a population of 100,-000 but less than 250,000 shall be $12,000. The population of the Twentieth Judicial District, consisting of the counties aforesaid, was determined by the decennial census of 1920 to be 109,564. The petitioner was paid an annual salary from the beginning of his term until May 16, 1929, of $10,000, in accordance with the Act of 1919, and from May 16, 1929, until May 31, 1931, was paid an annual salary of $12,000, in accordance with the Act of 1929. The Act of May 21, 1931, P. L. 167, reapportioned the judicial districts of the Commonwealth and designated the Twentieth Judicial District to consist of

the County of Huntingdon and to have one judge learned in the law. By section eleven of this act it is provided that where any district is divided the judge in office shall continue to serve until the expiration of his term, as the judge of the district which, by this act, is given the same number as that of the district in which the said judge has heretofore served.

The Act of June 1, 1931, P. L. 167, amended section four of the Act of May 16, 1929, P. L. 1780, by adding the following provision:

"The amounts of the salaries to be paid under this paragraph, in the respective judicial districts, shall be determined and fixed according to the population of such districts as ascertained by reference, from time to time, to the last preceding decennial United States census."

By the census of 1930, certified to the Secretary of the Commonwealth May 19, 1931, the population of Huntingdon County is 39,021. The Governor of the Commonwealth issued to the petitioner a commission as President Judge of the Twentieth Judicial District, consisting of the County of Huntingdon, for the term beginning May 21, 1931, and ending the first Monday in January, 1936. The petitioner has presented to the Auditor General during each month since June 1, 1931, a requisition for his compensation at the rate of $12,000 per annum, but the Auditor General has declined to honor said requisition or to draw any warrants to pay the petitioner anything in excess of a salary at the rate of $9000 per annum.

The legal question here involved is whether the legislature may decrease the salary of the petitioner during his term of office. If this question is to be answered in the affirmative, the motion to quash must be sustained.

It is conceded, as indeed it must be, since the decision of the case of Com. v. Mathues, 210 Pa. 372, that section thirteen of article III of the Constitution, which provides: "No law shall extend the term of any public officer, or increase or diminish his salary or emoluments, after his election or appointment," does not apply to judges. Section eighteen of article V of the Constitution of 1873 provides:

"The judges of the Supreme Court and the judges of the several courts of common pleas, and all other judges required to be learned in the law, shall at stated times receive for their services an adequate compensation, which shall be fixed by law, and paid by the State. They shall receive no other compensation, fee or perquisites of office for their services from any source, nor hold any other office of profit under the United States, this State or any other State."

Section seventeen of schedule No. 1 of the Constitution of 1873 provides:

"The General Assembly, at the first session after adoption of this Constitution, shall fix and determine the compensation of the judges of the Supreme Court and of the judges of the several judicial districts of the Commonwealth; and the provisions of the fifteenth section of the article on Legislation shall not be deemed inconsistent herewith. Nothing contained in this Constitution shall be held to reduce the compensation now paid to any law judge of this Commonwealth now in commission."

Section two of article V of the Constitution of 1790 provided, among other things:

"The judges of the supreme court, and the presidents of the several courts of common pleas shall, at stated times, receive, for their services, an adequate compensation, to be fixed by law, which shall not be diminished during their continuance in office."

The language of the Constitution of 1790 was continued until the Constitution of 1873. The positive prohibition contained in the Constitution of

1790 that the compensation "shall not be diminished during their continuance in office" was omitted from the Constitution of 1873, and the question before us is whether, notwithstanding this omission, there is an implied prohibition against the decrease of judges' salaries.

The defendants' position is, as we find stated in their brief:

"This is not a case of reduction in salary," but "it is our position that the legislature is as free to reduce salaries of judges as it is to increase them. . . . Things of this kind should work both ways."

If we considered nothing except the language of the Constitution itself, without reference to the fundamental principles of our government, divided as it is into three independent branches, and if we did not consider the history and development of the judicial office, the answer might well be that, there being no positive prohibition against the decrease of a judicial salary during the term for which the judge is elected, the legislature has the power to decrease it.

A long line of judicial pronouncements declare that the legislature may be prohibited by necessary implication from doing things which are not expressly prohibited in the Constitution: Lewis & Nelson's Appeal, 67 Pa. 153, 165; Sharpless v. Mayor of Philadelphia, 21 Pa. 147, 160; Page v. Allen, 58 Pa. 338, 345; De Chastellux v. Fairchild, 15 Pa. 18.

In White on the Constitution of Pennsylvania the principle is stated thus (page 6):

"Although not expressly prohibited, the Legislature could not do a judicial or executive act, nor could it pass a law contrary to some provision in the Constitution, although the latter might not lay a prohibition in express words upon the power of the Legislature."

It is inherent in our scheme of government that the three departments should be independent of each other and that neither department should perform functions belonging to the other nor exercise such influence over the persons conducting the affairs of other departments as to control their actions. To illustrate the inherent independence of the judiciary, it is said in O'Conner v. Warner, 4 W. & S. 223, 227:

"A legislative direction to perform a judicial function in a particular way, would be a direct violation of the constitution, which assigns to each organ of the government its exclusive function and a limited sphere of action."

In De Chastellux v. Fairchild, supra, it was held that the legislature does not have the right to direct that a new trial be granted, and in Com. v. Warwick, 172 Pa. 140, it is held that the legislature cannot pass an' expository act to compel the courts to adopt for the future a particular construction of a previously enacted statute.

Alexander Hamilton in The Federalist (No. 79), discussing the provisions of the Federal Constitution relating to the judiciary, said:

"Next to permanency in office, nothing can contribute more to the independence of the judges, than a fixed provision for their support. . . . In the general course of human nature, a power over a man's subsistence amounts to a power over his will. And we can never hope to see realized in practice the complete separation of the judicial from the legislative power, in any system which leaves the former dependent for pecuniary resource on the occasional grants of the latter."

In the case of Com. v. Mann, 5 W. & S. 403, it was decided that the legislature did not have the constitutional power to diminish the compensation of the president judges of the courts of common pleas fixed by law, during their continuance in office. In the great pronouncement of Mr. Justice Rogers

in that case he was not content to rely upon the provision of the Constitution prohibiting such decrease but delved into the history of the judiciary and, as we read his decision, he based it upon the inherent independence of the judiciary from the legislative branch of the government. Judge Von Moschzisker, in Com. *v.* Mathues, 210 Pa. 372, 399, writing the opinion of the court below, said of Judge Rogers's opinion:

"Anyone who reads that case carefully will see that Judge Rogers did not found his decision exclusively upon that phrase in the old constitution, but founded it on fundamental constitutional principles underlying the entire structure of our constitutional government."

It would be of little purpose to quote copiously from Judge Rogers's opinion, which through its whole structure demonstrates that in our frame of government the judiciary must be independent and have adequate compensation.

The Federal Constitution and the Constitution of Pennsylvania of 1790, which, as Judge Rogers points out, was modeled after the Federal Constitution, at least in this respect, both provide that the compensation of judges "shall not be diminished during their continuance in office." Does the failure to include those words in the Constitution of 1873 indicate an intention to depart from our structure of government so as to weaken the independence of the judiciary to the extent that the legislature may deny adequate compensation by decreasing it during an official term? Judge von Moschzisker has dealt ably with this question in Com. *v.* Mathues, *supra.* He said (page 401): "If it should be held for a moment that the legislature, after fixing the salary of a judge, had power to reduce it, we would be obliged to hold that they would have the power to reduce the salaries of all judges, as, in fact, such laws must be general, and, therefore, if they passed any such laws, they would be obliged to reduce the salaries of all judges. If they can pass a law reducing the salaries of judges, then they can pass a law practically sweeping away the salaries entirely, and if they can practically sweep away the salaries—'the power over a man's subsistence amounting to a power over his will'—they can crush and destroy the whole judicial department of the government. If this is possible, then the legislature by an act could destroy the government itself, for the judiciary is a coördinate branch of the government, without which the whole fabric would be bound to fall to pieces. Therefore, it is most plain that the judiciary do not need the alleged protection given by section 13 of article III to preserve them against diminishment of salary. Not only the mandate that the legislature shall keep judicial salaries up to an adequate standard, but the actual structure of our constitutional government is the protection given. The legislature is ordered by the people to keep salaries up to an adequate standard, and it is for them, from time to time, to say in the first instance what is adequate. What they may concede to be adequate may be or become more than adequate, but that would not give the legislature power to reduce. That right we have no doubt does not rest with the legislature, but rather is a judicial question. The judiciary might voluntarily, if the needs of the government required it, surrender a portion of their fixed salaries, but no portion thereof could be wrested from them by the legislature. Therefore the word 'diminish' in section 13 of article III is not necessary to be read into section 18 of article V of the constitution in order to maintain an independent judiciary."

Mr. Justice Thompson, in the same case, said (page 426): "In order to secure adequate compensation, both to existing judges by way of increase and to those subsequently appointed or elected, the constitution speaks clearly by its schedule, No. 17, where it provides: 'The General Assembly at the first session after the adoption of this constitution shall fix and determine the com-

pensation of the Supreme Court and of the Judges of the several Judicial Districts of the Commonwealth.' An Act executing the mandate of this schedule must, in view of the command contained in the fundamental law, necessarily fix a compensation that is adequate and when its adequacy is thus 'fixed and determined' in pursuance of the constitutional requirement, it becomes definitely then settled, prohibitive of decrease and permissive of increase in case of inadequacy, springing from changed conditions."

Attorney General Carson, in his opinion, 7 Dauph. 47, 91, construing the Judicial Salaries Act which was the subject of decision in Com. v. Mathues, supra, called attention to the seventeenth section of the schedule, prohibiting a reduction in compensation to the judges then in commission, and reached the same conclusion that the judges are protected against reduction in salaries.

It is argued that the language in Com. v. Mathues is dictum. It may be. Dicta may ripen into decision where the question is properly raised. We are confronted with the fact that all of the eminent Pennsylvania judges who have considered this question have reached the same conclusion. A similar conclusion was reached in The Chancellor's Case, 1 Bland Chan. Rep. (Md.) 595. In that case the legislature of Maryland attempted to reduce the salary of the chancellor. The chancellor thereupon presented a memorial to the legislature, containing such cogent and conclusive arguments, based upon the same fundamental principles which are made the basis of our Pennsylvania cases, that the legislature rescinded its action and restored the full salary of the chancellor.

The courts have also held that the legislature could not indirectly bring about a reduction of judicial salaries. In Com. v. Mann, supra, one of the questions was the power to tax the judicial salary which would, in effect, amount to a reduction of it, and after carefully considering this question the court, through Mr. Justice Rogers, came to the conclusion that it could not be done. So in Evans v. Gore, 253 U. S. 245, the Supreme Court of the United States came to the same conclusion. See, also, Miles v. Graham, 268 U. S. 501. It may be argued that the judiciary has nothing to fear from any attempted legislative control by a reduction of salaries. The question is not one of probability. It is one of possibility. It is not a question of fear but one of power with which we are confronted.

The Commonwealth contends that this is not a reduction of salary but it is in effect transferring Judge Bailey from one district to another in which the applicable salary is but $9000. Judge Bailey was elected as president judge of a district in which the salary at the time of the passage of the Act of 1931 was $12,000. Whatever be the legislative legerdemain, the effect on him is to reduce his salary as President Judge of the Twentieth Judicial District. In this connection we think the cases of Guldin v. Schuylkill County, 149 Pa. 210, Com. v. Comrey, 149 Pa. 216, and Com. ex rel. Woodring v. Walter, 274 Pa. 553, are applicable.

In Guldin v. Schuylkill County, the plaintiff was elected coroner when under the population of that county the coroner was paid fees. After he took office, the census of the county was ascertained so as to put it into a class which changed the coroner's office from a fee to a salary position. It was held that he was entitled to the fees and not required to accept the salary.

In Com. v. Comrey, the same decision was applied to the Sheriff of Schuylkill County.

In Com. ex rel. Woodring v. Walter, the relator was elected County Commissioner of Northumberland County, and when he took office the county under the preceding census had a population of less than 150,000. After tak-

ing office the population of the county was ascertained and certified as more than 150,000. The relator claimed the salary which attached to counties having more than 150,000 population, and he was held not to be entitled to it. Of course, these cases are based on the prohibition in section thirteen of article III of the Constitution which forbids the increase or decrease of the salary of any public officer after his election or appointment. But if there is an inherent prohibition against the decrease of the salaries of judges, the foregoing cases show that that decrease cannot be effected by the change of a classification of the judicial district.

We are not insensible to the argument that the judges of the neighboring counties of Bedford and Mifflin, carved out of the Twentieth Judicial District, and of all the other counties in which the population is less than 65,000, receive but $9000 salary, while Judge Bailey, serving now in a district of the same class, will receive $12,000. But that inequality cannot override the fundamental principle to be applied.

In the case of Com. ex rel. Woodring v. Walter, supra, the county commissioner was actually serving in a county in which the census taken as of January 1, 1920, showed it to have more than 150,000 population, but because it was not ascertained and certified his compensation was required to be fixed as of the date when he took office. So Judge Bailey's compensation is fixed as of the date when he took office, and if the legislature has no power to reduce it the inequality must give way to the fundamental principle.

For the foregoing reasons we conclude that there is no power in the legislature to decrease the salary of the plaintiff during the term for which he was elected by reducing the judicial district in which he was elected and putting it into a different classification.

Now, January 8, 1932, the motion to quash the petition in mandamus is hereby dismissed.

From Homer L. Kreider, Harrisburg, Pa.