## Increased Retirement Allowances

NARIN, Deputy Attorney General, November 4, 1955.—You have requested an opinion from this department as to whether the Public School Employes' Retirement Board may continue to pay the increased

retirement allowances provided for in the Act of May 23, 1949, P. L. 1804 (hereinafter referred to as the First Amendatory Act), which amended subsection 4 of section 14 of the Act of July 18, 1917, P. L. 1043, as amended, commonly known as the School Employes' Retirement Law.

The First Amendatory Act increased the minimum monthly payment to former teachers, principals, supervising principals and superintendents who were separated from school service for any reason prior to July 1, 1919, and had 20 years of service or who were separated from school service prior to July 1, 1919, because of physical or mental disability. It also established minimum disability and superannuation allowances for those retired employes or their beneficiaries who were in receipt of disability or superannuation retirement allowances on September 1, 1949.

### Statutory Construction

The Act of May 26, 1949, P. L. 1818 (hereinafter referred to as the Second Amendatory Act), was enacted into law three days after the First Amendatory Act. It also amended section 14 of the School Employes' Retirement Law. The purpose of the Second Amendatory Act, as indicated by the italicized words in the official reprint thereof, was to add clause (d) to subsection 3 of section 14. However, it restated the entire section and in so doing restated subsection 4 as it had appeared prior to enactment of the First Amendatory Act. Clause (d), inter alia, established a minimum superannuation retirement allowance for certain retired employes.

Section 71 of the Statutory Construction Act of May 28, 1937, P. L. 1019, as amended, provides that in printing amendatory laws the words, phrases or provisions of existing law, if any, which have been stricken out or eliminated by the adoption of the

amendment shall be printed between brackets and all new words, phrases or provisions, if any, which have been inserted into or added to the law by the passage of such amendment shall be printed in italics. No words were printed in brackets in the official reprint of the Second Amendatory Act, thus indicating that the legislature did not intend to repeal the First Amendatory Act.

Section 75 of the Statutory Construction Act provided in 1949 that:

"Whenever two or more amendments to the same provision of a law are enacted at the same or different sessions, one amendment overlooking and making no reference to the other or others, . . . the latest in date of final enactment shall prevail from the time it becomes effective."

U. S. Steel Co. v. Allegheny County, 369 Pa. 423 (1952), (two dissents), involved a conflict between two amendments to the same section of an act passed at the same session of the legislature, each overlooking and making no reference to the other. The Act of July 12, 1935, P. L. 674, expressly abolished a specific statutory right to pay taxes into court and replaced it with an entirely different procedure. The words intended to be deleted from existing law were bracketed and the new words were inserted in italics as required by section 71 of the Statutory Construction Act. The Act of July 15, 1935, P. L. 1007, amended the same section by adding a sentence to the same section as it had read prior to enactment of the Act of July 12, 1935, P. L. 674. The new sentence was in italics but there were no other brackets or italics to indicate that the amendment of July 12th was being repealed. The Supreme Court held that the two acts were absolutely irreconcilable and that the Act of July 12th was repealed by necessary implication. The decision was based upon general case law and section 75 of the

Statutory Construction Act. The court stated that since this was not an express repeal but a repeal by necessary implication no brackets or reference to the earlier law were necessary. Accord: Loushay Appeal, 370 Pa. 453 (1952).

Section 75 of the Statutory Construction Act was thereafter amended by the Act of May 27, 1953, P. L. 242, to read as follows:

"Whenever two or more amendments to the same provision of a law are enacted at the same or different sessions, one amendment overlooking and making no reference to the other or others, the changes in the law made by each shall be given effect and all the amendments shall be read into each other. If the changes made in the law are to any extent in direct conflict with each other, the latest in date of final enactment shall prevail, to the extent of the direct conflict, from the time it becomes effective. The fact that a later amendment (i) restates language of the original act which was deleted by an earlier amendment, or (ii) fails to restate language inserted by an earlier amendment, does not of itself create a conflict between the two amendments. Amendments are in conflict with each other only if the changes in the law made by each without considering the inserts and strike-outs of the other cannot be put into operation simultaneously."

Section 2 of the Act of May 27, 1953, P. L. 242, which amended section 75 of the Statutory Construction Act, provides:

"The provisions of the foregoing amendments being intended as a clarification of existing law, shall apply to all acts of assembly heretofore enacted as well as to those hereafter enacted. The provisions of this section shall not affect any matter heretofore finally adjudicated by any court of this Commonwealth."

The stated purpose of the 1953 amendment to section 75 of the Statutory Construction Act was to clarify existing law; the General Assembly in effect saying that the interpretation given to section 75 by the Supreme Court in U. S. Steel Co. v. Allegheny County and Loushay Appeal, supra, was not in accord with the original legislative intent.

The First Amendatory Act and Second Amendatory Act were both passed in 1949, prior to the 1953 amendment to section 75 of the Statutory Construction Act. Therefore, if section 2 of the 1953 act, which amended section 75 of the Statutory Construction Act is constitutional, the conflict between the First Amendatory Act and the Second Amendatory Act will be resolved in accordance with the provisions of section 75, as amended, the changes made by each amendment will be given effect and the two amendments will be read into each other. However, if this section is unconstitutional, the conflict between the First Amendatory Act and the Second Amendatory Act will be resolved in accordance with the provisions of section 75 as it read prior to the amendment of 1953 and as construed by the Supreme Court in U. S. Steel Co. v. Allegheny County and Loushay Appeal, supra.

The problem of statutory construction thus turns on the question of whether or not section 2 of the 1953 act is constitutional.

As late as 1949, the Supreme Court, in dictum, reiterated the fundamental proposition that under the doctrine of separation of powers the legislature cannot dictate to the courts how they shall decide matters coming before them nor can the legislature overrule a judicial decision by an act of assembly: Leahey et al. v. Farrell et al., 362 Pa. 52 (1949). A long line of cases has firmly settled the proposition that the legislature cannot pass an expository act to compel the courts to adopt a particular construction of a previ-

ously enacted statute: Commonwealth v. Warwick, 172 Pa. 140 (1895) ; Titusville Iron Works v. Keystone Oil Co., 122 Pa. 627 (1888) ; Haley et al. v. City of Philadelphia, 68 Pa. 45 (1871) ; Reiser v. The William Tell Saving Fund Association, 39 Pa. 137 (1861).

Section 2 of the 1953 act is, therefore, clearly an unconstitutional attempt by the legislature to overrule the U. S. Steel and Loushay cases and in determining whether the Second Amendatory Act repealed the First Amendatory Act we must look to section 75 of the Statutory Construction Act as then in effect and as interpreted by the Supreme Court. Under the rule laid down in the U.S. Steel and Loushay cases, we are driven to the conclusion that the Second Amendatory Act repealed the First Amendatory Act by necessary implication and that, therefore, the changes made in subsection 4 of section 14 were repealed.

### Constitutionality

Even if we assume that the Second Amendatory Act did not repeal the First Amendatory Act, the First Amendatory Act is clearly unconstitutional.

Article III, sec. 11, of the Constitution of Pennsylvania provides:

"No bill shall be passed giving any extra compensation to any public . . . employee . . . after services shall have been rendered. . . ."

Subsequent to enactment of the First and Second Amendatory Acts, the Supreme Court declared that an increase in a retirement allowance after the employe has retired and performs no further services is violative of this constitutional inhibition: Koehnlein v. Allegheny County Employees' Retirement System, 373 Pa. 535 (1953) ; Jameson v. Pittsburgh, 381 Pa. 366 (1955). The language of Mr. Justice Jones in the Koehnlein case, at page 543, has equal application to the instant question:

"The plight of retired . . . employees because of the inadequacy of their retirement allowances in relation to the increased cost of living, particularly in the past few years, is regrettable to say the least. But, sympathy for their distress affords no justification for ignoring established constitutional restraints. If legislative inroads upon retirement funds by way of gratuitous disbursements therefrom were to be tolerated, it would not be long before retirement systems in general would be imperiled, if not destroyed, to the detriment not only of the retired employees intended to be benefitted by the unconstitutionally increased retirement allowances but also of the current contributors to retirement funds who are still in the service. . . ."

### Conclusion

It is our opinion that the First Amendatory Act was repealed by the Second Amendatory Act. It is also our opinion that the First Amendatory Act and the similar provision in the Second Amendatory Act are unconstitutional. For these reasons we must advise you that you may not continue to make increased payments to any former employe who was retired on or before the effective date of such purported increase.