507 F.2d 743
 7 ERC 1177, 5 Envtl. L. Rep. 20,043
 COLORADO PUBLIC INTEREST RESEARCH GROUP, INC., a nonprofit
Colorado Corporation, et al., Plaintiffs-Appellants,
v.
Russell TRAIN, as Administrator of the United States
Environmental ProtectionAgency; and United States
Environmental Protection Agency,
Defendants-Appellees.
 No. 74-1154.
 United States Court of Appeals, Tenth Circuit.
 Argued Sept. 13, 1974.
Decided Dec. 9, 1974.
 
 David C. Mastbaum and James L. Kurtz-Phelan, Denver, Colo. (David E. Engdahl, Western Reserve Law School, Cleveland, Ohio, on the brief), for plaintiffs-appellants.
 Dirk D. Snel, Atty., Dept. of Justice (Wallace H. Johnson, Asst. Atty. Gen., James L. Treece, U.S. Atty., William K. Hickey, Asst. U.S. Atty., and Edmund B. Clark and Michael D. Graves, Attys., Department of Justice, on the brief), for defendants-appellees.
 Jim Guy Tucker, Atty. Gen., Arkansas; Vern Miller, Atty. Gen., Kansas; Frank J. Kelley, Atty. Gen., Michigan, William M. Eichbaum, Deputy Secretary for Enforcement and General Counsel, Pennsylvania Dept. of Environmental Resources; and Slade Gorton, Atty. Gen., Washington, on the brief of The State of Arkansas, The State of Kansas, The State of Michigan, The Common-wealth of Pennsylvania, and The State of Washington, as amici curiae.
 Warren Spannaus, Atty. Gen., Peter W. Sipkins, Sol. Gen., and Eldon G. Kaul, Special Asst. Atty. Gen., on the brief of The State of Minnesota, as amicus curiae, and joint brief of the Minnesota Pollution Control Agency, as amicus curiae.
 Before HOLLOWAY and McWILLIAMS, Circuit Judges, and CHRISTENSEN,* District Judge. McWILLIAMS, Circuit Judge.
 
 
 1
 This is a citizen suit brought by plaintiffs against the United States Environmental Protection Agency, and Russell Train as its Administrator, wherein the plaintiffs, under the provisions of the Federal Water Pollution Control Act, as amended, sought to compel the Administrator to perform what was alleged to be a nondiscretionary duty to control discharges of radioactive materials into navigable waters. Both plaintiffs and defendants moved for summary judgment on the ground that there were no genuine issues of fact and both agreed that the sole issue was a pure question of law as to the meaning of the Federal Water Pollution Control Act, as amended, 33 U.S.C. 1251 et seq. (Supp.1973). The trial court granted defendants' motion for summary judgment and entered summary judgment for defendants.[1] Plaintiffs now appeal the judgment thus entered. We reverse.
 
 
 2
 We are here concerned with the amendments made in 1972 to the Federal Water Pollution Control Act, and the regulations issued pursuant thereto. The amendments thus made to the Act will hereinafter be referred to as the 1972 Amendments. This is a statutory construction case, and accordingly we shall now refer to the particular statutes and administrative regulations with which we are here concerned.
 
 
 3
 33 U.S.C. 1311(a) (Supp.1973) provides, in effect, that the discharge of any pollutant by any person into navigable waters shall be unlawful except in compliance with the various sections of the 1972 Amendments. Under 33 U.S.C. 1342(a)(1) (Supp.1973) the Administrator may, after opportunity for public hearing, issue a permit for the discharge of any pollutant, upon the meeting of such conditions as the Administrator determines to be necessary to carry out the several provisions in the Act, as amended.
 
 
 4
 33 U.S.C. 1362(6) (Supp.1973) defines 'pollutants' and reads as follows:
 
 
 5
 'The term 'pollutant' means dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water. This term does not mean (A) 'sewage from vessels' within the meaning of section 1322 of this title; or (B) water, gas, or other material which is injected into a well to facilitate production of oil or gas, or water derived in association with oil or gas production and disposed of in a well, if the well used either to facilitate production or for disposal purposes is approved by authority of the State in which the well is located, and if such State determines that such injection or disposal will not result in the degradation of ground or surface water resources.'
 
 
 6
 The Administrator, pursuant to his obligations under 33 U.S.C. 1342 (Supp.1973), issued regulations which became effective July 1, 1973, regarding permits to discharge pollutants. 40 C.F.R. 125.1(x) (1973) reads in pertinent part as follows:
 
 
 7
 '125.1 Definitions
 
 
 8
 '(x) The term 'pollutant' means * * * radioactive materials * * * discharged into water. (Fifteen other listed pollutants omitted.) * * *.
 
 
 9
 'COMMENT.-- The legislative history of the (Federal Water Pollution Control) Act 'Amendments of 1972' reflects that the term 'radioactive materials' as included within the definition of 'pollutant' in section 502 of the Act covers only radioactive materials which are not encompassed in the definition of source, by-product, or special nuclear materials as defined by the Atomic Energy Act of 1954, as amended, and regulated pursuant to the latter Act. Examples of radioactive materials not covered by the Atomic Energy Act and, therefore, included within the term 'pollutant' are radium and accelerator produced isotopes. (H.R.Rep. 92-911, 92d Cong.2d Sess., 131, March 11, 1972; 117 Cong.Rec. 17401, daily ed., November 2, 1971; 118 Cong.Rec. 9115, daily ed., October 4, 1972.)'
 
 
 10
 The foregoing COMMENT is at the heart of the present dispute and perhaps deserves a rereading.
 
 
 11
 Another section of the 1972 Amendments, 33 U.S.C. 1371(a) (Supp. 1973), relied on by the defendants, reads in pertinent part as follows:
 
 
 12
 'This chapter shall not be construed as (1) limiting the authority or functions of any officer or agency of the United States under any other law or regulation not inconsistent with this chapter; * * *.'
 
 
 13
 Although neither is a party to the present proceeding, the Atomic Energy Commission and the Public Service Company of Colorado are to a degree, at least, involved. The Atomic Energy Commission owns the Rocky Flats Plant located between Golden and Boulder, Colorado, which plant until recently has been operated for the Commission by the Dow Chemical Company. The Public Service Company of Colorado under license from the Atomic Energy Commission owns and maintains the Fort St. Vrain Nuclear Generating Station located at Platteville, Colorado. Radioactive materials, including 'by-products materials,' 'source material,' and 'special nuclear material' are, or will be, discharged into navigable waters within the state of Colorado by operation of the Bocky Flats Plant and the Fort St. Vrain Nuclear Generating Station. We are advised that both nuclear facilities have applied to the EPA Administrator for a permit to authorize the discharge of liquid effluents into Colorado waters and that in each instance the Administrator, in line with the COMMENT set forth above, has refused to regulate the discharge of radioactive materials from these facilities.
 
 
 14
 It was in this general setting that the plaintiffs brought their citizen suit as provided in 33 U.S.C. 1365(a)(2) (Supp.1973) against the Administrator seeking to compel him to exercise his regulatory duties under the 1972 Amendments as concerns the discharge of radioactive materials into navigable waters. It is the plaintiffs' basic position that the statute means what it says, and that under the definition of 'pollutant,' as set forth in 33 U.S.C. 1362(6) (Supp.1973), it is the duty of the Administrator to regulate the discharge of all radioactive materials into navigable waters.
 
 
 15
 The defendants' basic position is as set forth above in the COMMENT to 40 C.F.R. 125.1(x) (1973), namely, that those radioactive materials which are 'by-product materials,' 'source material,' and 'special nuclear material' are not encompassed in the 1972 Amendments and are hence subject to only such regulation as is provided under the Atomic Energy Act of 1954. The trial court adopted the view of the Administrator and it was on this basis that summary judgment was entered for the defendants. We disagree with this disposition of the matter. Brief reference to the general law relating to statutory construction may be helpful.
 
 
 16
 It is a basic rule of statutory construction that statutes are to be construed in a manner so as to effectuate the intent of the enacting body, and that in construing a statute the court should first look to the language of the statute itself. If the language is clear and the purpose appears with reasonable certainty, there is no need to resort to other rules of construction to ascertain its meaning. United States v. Ray, 488 F.2d 15 (10th Cir. 1973). An unambiguous statute must be given effect according to its plain and obvious meaning. United States v. Western Pacific Railroad Company,385 F.2d 161 (10th Cir. 1967).
 
 
 17
 Another cardinal rule of statutory construction is that where the legislature has acted to except certain categories from the operation of a particular law, it is to be presumed that the legislature in its exceptions intended to go only as far as it did, and that additional exceptions are not warranted. In other words, where there be express exceptions to a statute, additional exceptions by implication are not favored. In re Monks Club, Inc., 64 Wash.2d 845, 394 P.2d 804 (1964), and Knapczyk v. Ribicoff, 201 F.Supp. 283 (N.D.Ill.1962). See also 2A Sands, Statutes and Statutory Construction, 47.11 (4th ed. 1973), where it is stated that when there is an express exception to a statute, no other exceptions will be implied. See also 47.07 in that same treatise which states, in part, that a statute which declares what a term 'means,' is to be given a strict interpretation and is not subject to expansion. Here, the statute declares not only what the term pollutant 'means,' but what it 'does not mean.'
 
 
 18
 And a final rule of construction which has applicability to the present controversy is that the legislative history of a statute cannot be used to change the meaning of a clear and unambiguous statute. United States v. Oregon, 366 U.S. 643, 81 S.Ct. 1278, 6 L.Ed.2d 575 (1961), and Ex Parte Collett, 337 U.S. 55, 69 S.Ct. 944, 959, 93 L.Ed. 1207 (1949). Or, as was well stated in Gemsco, Inc. v. Walling, 324 U.S. 244, at 260, 65 S.Ct. 605, at 615, 89 L.Ed. 921 (1945), 'the plain words and meaning of a statute cannot be overcome by a legislative history which, through strained processes of deduction from events of wholly ambiguous significance, may furnish dubious bases for inference in every direction.' See also United States v. Zions Savings & Loan Association, 313 F.2d 331 (10th Cir. 1963), and Haskell v. United States, 241 F.2d 790 (10th Cir. 1957).
 
 
 19
 Keeping these general rules in mind let us look at the various statutory provisions with which we are here concerned. It was the expressed general intent of Congress in the 1972 Amendments to enact a comprehensive program looking towards the eventual elimination of all pollution of the Nation's waterways so as to 'restore and maintain the chemical, physical, and biological integrity of the Nation's waters.' 33 U.S.C. 1251 (Supp.1973). And the term 'pollution' was defined as meaning 'the man-made or man-induced alteration of the chemical, physical, biological and radiological integrity of water.' 33 U.S.C. 1362(19) (Supp.1973). The EPA Administrator was generally charged with carrying out the intent behind the 1972 Amendments, and was specifically charged with the administration and enforcement of the several provisions of the statute.
 
 
 20
 In essence the sections referred to at the outset of this opinion prohibit the discharge of pollutants into navigable waters unless a permit to do so be granted by the EPA Administrator, and the EPA Administrator in considering a request to thus discharge pollutants is subject to the various requirements and limitations provided for in the Act and amendments thereto. The statute then defines the term 'pollutant,' and states that among other things the term 'pollutant means * * * radioactive materials * * *.' The statute does not say 'some' radioactive materials, or radioactive materials 'except for,' just 'radioactive materials.' So, it would seem to us that if we give the words thus used in the statute their plain and obvious meaning, the EPA Administrator is charged with the duty of regulating the discharge of radioactive materials into navigable waters. No exceptions having been set forth in the statute as concerns radioactive materials, it would follow that the term 'radioactive materials' means all radioactive materials, and we so hold.
 
 
 21
 We are fortified in our conclusion in this regard by the fact that the statute defining 'pollutants' does contain two exceptions, neither of which modifies the term 'radioactive materials.' Under the rule of construction referred to above, where a statute contains express exceptions, the courts should be exceedingly slow in implying unexpressed exceptions, lest the courts thereby thwart the legislative intent.
 
 
 22
 In our view, then, the statute is plain and unambiguous and should be given its obvious meaning. Such being the case, under the authorities above cited, we need not here concern ourselves with the legislative history of the 1972 Amendments. In this regard we would note parenthetically that in our view the legislative history of the 1972 Amendments is conflicting and inconclusive. Be that as it may, in the case before us there is no need to address ourselves to the ofttimes difficult task of ascertaining legislative intent through legislative history. Here, the legislative intent is clearly manifested in the language of the statute itself, and we need not resort to legislative history. United States v. Oregon, supra, and Ex Parte Collette, supra.
 
 
 23
 As indicated, the main thrust of the defendants' argument in this court is that if there is not in fact an ambiguity in the 1972 Amendments, at least the 1972 Amendments are possessed of an 'unfinished character' which requires it to be juxtaposed with the Atomic Energy Act of 1954. The defendants urge that if the 1972 Amendments be so considered, then 'by-products materials,' 'source material,' and 'special nuclear material' are under the Atomic Energy Act of 1954 specifically subjected to the control of the Atomic Energy Commission, which control includes the exclusive power to regulate the discharge of such radioactive materials; and that the Atomic Energy Commission has been, and is, thus regulating the discharge of such radioactive materials. Thus. according to the defendants, the Administrator under the 1972 Amendments only regulates the discharge or 'other radioactive materials, such as radium and accelerator produced isotopes. All of which is of course in line with the COMMENT of the EPA in 40 C.F.R. 125.1(x) (1973). Suffice it to say that this line of argument does not square with our reading of the 1972 Amendments. In this regard we are of course mindful of the rule that the construction given a statute by the administrative officer charged with carrying out its provisions is to be given weight. Board of Dir. & O., Forbes Fed. Cr. U. v. National Cr. U. Adm., 477 F.2d 777 (10th Cir. 1973). However, such should not be permitted to overrule the express language of a statute, else the administrative officer will himself be thwarting the will of Congress. Or, as was said in Norwegian Nitrogen Products Co. v. United States, 288 U.S. 294, 315, 53 S.Ct. 350, 358, 77 L.Ed. 796 (1933), 'administrative practice does not avail to overcome a statute so plain in its commands as to leave nothing for construction.'
 
 
 24
 In support of its general line of reasoning the defendants cite that section of the statute which states that the 1972 Amendments are not to be construed as limiting the functions of any officer or agency acting under any other law or regulation 'not inconsistent with this chapter.' 33 U.S.C. 1371(a) (Supp. 1973). Our answer to that is that the 1972 Amendments are inconsistent, in the particulars indicated, with the Atomic Energy Act of 1954.
 
 
 25
 We are advised that this is a case of first impression. However, a case which addressed itself to a somewhat similar problem is Scenic Hudson Preservation Conference v. Callaway, 370 F.Supp. 162 (S.D.N.Y.1973), aff'd 499 F.2d 127 (2nd Cir. 1974). The 1972 Amendments provide that a permit to discharge dredged or fill material is to be obtained from the Secretary of the Army, acting through the Chief of Engineers, rather than the Administrator. 33 U.S.C. 1344 (Supp.1973). However, Consolidated Edison, which was in the process of trying to build a hydroelectric generating plant, contended that since it was under the general jurisdiction of the Federal Power Commission, it was not requited to get a permit from the Army Corps of Engineers. In rejecting such contention, that court stated as follows:
 
 
 26
 '* * * Con Ed would infer an exception from the Amendments for hydroelectric plants on the theory that Congress could not have intended to interfere with the jurisdiction of the FPC in view of the long settled policy, discussed above, of allowing that agency unique control over the production of hydroelectric power. The argument is persuasive at first blush, but even more plausible is plaintiffs' contention that Congress would not design an Act which on its face is all-inclusive, but for specifically enumerated exceptions, and yet intend to establish an unmentioned exception of the scale suggested here. Without any indication that Con Ed's reading of the Congressional will is accurate, the carving out of so major an exception would be improper. If this was Congress' intention and the omission is mere oversight, the remedy rests in Congress' hands, and Congress has shown, by its recent amendments to the Alaska pipeline legislation, that it will not hesitate to remove an obstacle to energy production when it believes a change of requirements is necessary in the public interest.'
 
 
 27
 We generally concur with the reasoning of this Scenic Hudson case. We are advised in the instant case that 'by-product material,' 'source material,' and 'special nuclear materials' constitute virtually all of the radioactive materials that are of significant concern to water quality, and if such materials are excepted from the 1972 Amendments, then the exception is devouring the general policy of the statute. Edward B. Marks Music Corp. v. Colorado Mag., Inc., 497 F.2d 285 (10th Cir. 1974). In any event, if in the 1972 Amendments Congress intended to except 'by-product materials,' 'source material,' and 'special nuclear material' when it used the unmodified term 'radioactive material,' then the onission should be corrected by Congress, and not the courts.
 
 
 28
 A case mentioned by the trial court in its memorandum opinion and cited here by the defendants is Northern States Power Company v. State of Minnesota, 447 F.2d 1143 (8th Cir. 1971), aff'd, 405 U.S. 1035, 92 S.Ct. 1307, 31 L.Ed.2d 576 (1972). We do not deem that case to be particularly helpful in our resolution of the present case. That case stands for the proposition that Congress in enacting the Atomic Energy Act of 1954 preempted the field to the exclusion of the several states as concerns the regulation of radioactive waste releases from nuclear power plants. Assuming the correctness of this proposition, such does not mean that Congress is thereafter foreclosed from later deciding, as we believe it did, to vest the Environmental Protection Agency with the duty of regulating the discharge of all radioactive materials into navigable waters.
 
 
 29
 In sum, then, the 1972 Amendments charge the EPA Administrator with the duty of regulating the discharge of all radioactive materials into the Nation's waters, and the trial court erred in granting the defendants' motion for summary judgment.
 
 
 30
 The trial court denied plaintiffs' request for reasonable attorney fees as provided in 33 U.S.C. 1365(d) (Supp. 1973). Plaintiffs appeal this ruling and contend that such constituted and abuse of discretion on the part of the trial court. In view of our desposition of the appeal, we need not here address ourselves to the merit of that particular matter.
 
 
 31
 Judgment reversed and cause remanded for further proceedings consonant with the views herein expressed.
 
 
 
 *
 Of the District of Utah, sitting by designation
 
 
 [1]
 See Colorado Public Interest Group, Inc. v. Train, 373 F.Supp. 991 (D.C.Colo.1974)