7 So.2d 572

**NELSON v. BROWN.**

6 Div. 948.

Supreme Court of Alabama.

April 9, 1942.

Wm. B. McCollough, of Birmingham, for appellant.

Thos. S. Lawson, Atty. Gen., and John W. Lapsley and J. Edw. Thornton, Asst. Attys. Gen., for appellee.

THOMAS, Justice.

The decree was for declaratory judgment touching a phase of the general revenue bill. The agreed statement of facts, among other things, was:

"The plaintiff operates what is generally known as a beauty parlor or other place where hair-dressing, facial treatments, manicuring or hair waving is done for the public for hire or reward within the City of Birmingham, Jefferson County, Alabama. Plaintiff does business under the name and style of 'Bertha's Beauty Shop'.

"Plaintiff has in her beauty shop an operator who assists plaintiff in giving hair-dressing, facial treatments, manicuring or hair waving to the public, and as compensation for the services rendered by said operator, said operator receives the sum of 50% of all monies collected for the work done by said operator, plaintiff receiving the balance of said monies collected for work done by said operator. Said operator receives no salary from plaintiff and the sole compensation received by said operator are the commissions upon the work done as aforesaid. The plaintiff has so operated said shop continuously from Oct. 1, 1940, to date.

"Plaintiff has failed to procure a state and county license for operating a beauty shop for the year commencing October 1, 1940, as provided by Schedule No. 21 of Section 348 of the Revenue Laws of the State of Alabama for the year 1935. (Acts 1935 § 348, Schedule No. 21, p. 447 [Code 1940, Tit. 51, § 473].) The defendant has duly and legally issued a citation to plaintiff to procure a state and county license as required by Schedule No. 21 of Section 348 of the said Revenue Laws of 1935. The plaintiff failed to appear in response to said citation and failed to procure said license, which said license is still unpaid and due.

"The said operator assisting plaintiff in giving the said beauty treatments, has not procured a state and county privilege license levied under the provisions of Schedule No. 86 of Section 348 of said Revenue Laws of 1935 (p. 474) [Code 1940, Tit. 51, § 549], nor has defendant made any effort to collect said license from said operator. The defendant threatened civil and criminal action against the plaintiff if she failed to pay the licenses under schedule No. 21 of Section 348." [Parentheses supplied.]

It is averred in the petition that the General Acts of 1935, § 348, Schedule 21, p. 447, Code 1940, Tit. 51, § 473, provide as follows: "Schedule 21. Each person operating what is generally known as a Beauty Parlor, or other place where hair dressing, facial treatments, manicuring, or hair waving is done shall pay a license of ten dollars ($10.00) *and for each operator so employed,* as follows: In cities of more than sixty thousand (60,000) inhabitants, six dollars ($6.00). In cities of less than sixty thousand (60,000) inhabitants and all other places whether incorporated or not, four dollars ($4.00). This schedule of fees shall apply to beauty parlor colleges where said colleges engage in beauty parlor work for which a charge is made or material used is charged therefor." [Italics supplied.]

Petitioner further avers that Schedule 86, Section 348, Acts 1935, p. 474, Code 1940, Tit. 51, § 549, provides as follows: "Schedule 86. For each person engaging in the business of manicuring, hair dressing, or administering facial treatments, five dollars ($5.00), provided this Schedule shall not apply to such persons employed in Beauty Shops and beauty shop colleges, paying the license as provided under Schedule 21."

Petitioner further avers that the Legislature of Alabama enacted what is known as the Cosmetology Act during the year 1937, and the same was approved by the Governor on the 2d day of March, 1937. General and Local Acts, Special Session 1936–37, pp. 249, 257, Code 1940, Tit. 62, § 279 et seq. Section 12 of said Cosmetology Act provides, in an appropriate part, as follows: "Each such Board shall require each operator, *whether employed in a shop* and subject to the license imposed by Schedule 21 of Section 348 of the Revenue Act approved July 10th, 1935, or working in a shop on piece work, or commission or as an independent contractor and there-

fore not liable to such license, each school of Cosmetology and each beauty shop in its respective County to renew their license hereunder once each year by requiring each of the above to make application to the Board for such renewal license and such renewal application shall be accompanied by a renewal fee as follows; for operators, Three ($3.00) Dollars; for shops, Ten ($10.00) Dollars; for schools, Fifty Dollars ($50.00), and there shall be attached to each application of an operator for renewal a sworn certificate of health of said applicant issued by a registered licensed physician. A certificate or license shall expire on the 31st day of December in each year. The holder of an expired license may within three years of the date of the expiration have his or her certificate restored upon the payment of five ($5.00) Dollars together with satisfactory proof to the Board of the County in which such applicant resides of his or her qualifications to resume practice or occupation." [Italics supplied.]

The last-quoted section must be construed in the light of the foregoing Section XI, pp. 256, 257, General and Local Acts, Special Session 1936–37, Code 1940, Tit. 62, § 288, which provides that the fees and charges so collected shall be kept as a separate fund to meet the administrative purposes and expenses of the Board of Cosmetology.

In State v. Birmingham Beauty Shop, 240 Ala. 170, 198 So. 435, this court considered Schedules 21 and 86 of the General Acts of 1935, pp. 447 and 474, respectively. A review is now sought, urging therefor the subsequent enactment of 1936–37, Gen. & Local Acts, Special Session 1936–37, p. 257. The effect of this later act was to regulate the occupation and practice of Cosmetology in all Counties of the State of Alabama now having or which may hereafter have a population of 400,000 or more according to the last or any subsequent Federal Census; to establish a Board of Cosmetological Examiners; to define their duties and to "provide for the salaries of such Boards and the employees of such Boards", etc. The pertinent portion of such act has been set out above. Such was an amendment of the Act of July 23, 1931, General Acts of Alabama of 1931, p. 653, adding the clause now to be considered.

It will be noted that the act construed in State v. Birmingham Beauty Shop, supra, pertained to the general reve-

518

nue bill touching the conduct of the business and operators thereof in such beauty shops. The later act had an entirely different purpose in its Section 12, hereinabove set out.

Appellant's counsel thus states his insistence: "The same legislature that passed the 1935 Revenue Statute including Schedule 21 and Schedule 86 also passed Section 12 of the Cosmetology Act before Schedule 21 and Schedule 86 had been construed or applied by the Supreme Court, and, therefore, *the legislature* through and by Section 12 of the Cosmetology Act *could declare* the *intention* of the legislature at the time Schedule 21 and 86 of the Revenue Statute was enacted. * * *"

Appellant's counsel cites in support of this statement Lindsay v. United States Savings & Loan Ass'n et al., 120 Ala. 156, 24 So. 171, 175, 42 L.R.A. 783. The powers of the legislature and the courts touching retroactive and expository efficacy are adverted to, and it is said "cannot be conceded to any law." However, that taken upon a previous statute may be explained by legislative enactment but no new interpretation can thus arbitrarily be forced upon the judiciary for "this would be the substitution of the language and meaning of the one for the other." Also the case of Reiser v. William Tell Sav. Fund Association, 39 Pa. 137, was discussed in the Lindsay case, supra, and the court, among other things, said:

"* * * 'Here, then, is the question raised for our consideration: Had the legislature of 1859 any constitutional authority to direct the judiciary department how it should interpret the act of 1850 and its supplements, authorizing the incorporation of such associations as this, and to require it to change the interpretation which it had already put upon those acts, and thus change the legal effect of contracts previously made under them? We are constrained to answer this question in the negative. * * * The legislature have certainly no such authority over us as to change the laws of language. If given language does not express a given meaning, they may give us other language that does; but this will not change the meaning of the former language. In the very nature of language, that is impossible. It is with and by virtue of the new expressions that we get the new meaning; and, the meaning of the law being the law itself, the law can be no older than the effectual expression of it.

* * * Arbitrary interpretation is no interpretation at all, but only the substitution of one man's language and meaning in place of the language and meaning of another. True interpretation is the ascertainment of another's meaning, from his expressions, not from our thoughts and wishes.' * * * The purpose of each enactment, and the operation and effect of each, if a valid exercise of legislative power, are the exposition by the legislature of statutes, which it does not repeal or change, but leaves in force, and the compulsion of the courts, in the future, to adopt that construction. * * * The prohibition is directed to, and rests upon, the courts, not upon the parties to the transaction. Read in the light of its history, coming in but a short time after the announcement of the decision in the Falls case [Falls v. United States Savings Loan & Bldg. Co., 97 Ala. 417, 13 So. 25, 24 L.R.A. 174, 38 Am.St.Rep. 194], it is but a mandate to the courts to depart from that decision, and accept the legislative exposition of the nature or character and obligation of these transactions. We are constrained to declare that, so far as the enactment relates to past transactions, the legislature exceeded its powers, and assumed power the constitution commits to the judiciary exclusively. Carleton v. Goodwin's Ex'rs, 41 Ala. 153; [Alabama Life] Insurance [& Trust] Co. v. Boykin, 38 Ala. 510. * * *

"The purposes of the constitutional requirement must be borne steadily in mind, when it becomes necessary to determine whether there has been legislative observance of it. The exposition of these purposes by Judge Cooley is accepted, we believe, in all the states in which a like limitation prevails. They are—'First, to prevent "hodgepodge" or "logrolling" legislation; second, to prevent surprise or fraud upon the legislature by means of provisions in bills of which the titles give no intimation, and which might therefore be overlooked, and carelessly and unintentionally adopted; and, third, to fairly apprise the people, through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered, in order that they may have the opportunity of being heard thereon, by petition or otherwise, if they shall so desire.' * * *"

█ The provisions of the act amending the Board of Cosmetology Act are not an amendment of the revenue laws. Nachman

v. State Tax Commission, 233 Ala. 628, 173 So. 25; Dearborn v. Johnson, 234 Ala. 84, 173 So. 864.

Such construction of the acts in question would save its unconstitutionality, for it is declared that an effort to amend the revenue act by an act amending such board would violate Section 45 of the Constitution, since it would contain two subjects, which are not expressed in the title. Dunning v. Holcombe, 203 Ala. 546, 84 So. 740; State v. Southern Railway Co., 115 Ala. 250, 22 So. 589; Blach & Sons v. Hawkins, 238 Ala. 172, 174, 189 So. 726.

■ We have herein set out several portions of the Lindsay case to the effect that a legislative attempt to construe statutes is a usurpation of judicial function. Hackett v. Cash, 196 Ala. 403, 72 So. 52; Caylor v. State, 219 Ala. 12, 121 So. 12; Berk v. State, 225 Ala. 324, 142 So. 832, 84 A.L.R. 740. See, also, Macartney v. Shipherd, 60 Or. 133, 117 P. 814, Ann.Cas. 1913D, 1257; Titusville Iron-Works v. Keystone Oil Co., 122 Pa. 627, 15 A. 917, 1 L.R.A. 361.

In State v. Birmingham Beauty Shop, 240 Ala. 170, 198 So. 435, 436, supra, Mr. Justice Bouldin said:

"The State claims of the operators of the Beauty Shop an additional privilege tax based on the number of these other operators.

"The State insists they come within the clause 'and for each operator so employed,' in Schedule 21.

"The defendants insist this clause covers only employees having the relation of master and servant, and not operators having the status of independent contractors serving their customers.

"The Court of Appeals, affirming the trial court, takes this latter view, as clearly disclosed in the opinion now under review.
* * * * *

" 'So employed' in its connotation means engaged in giving beauty treatment as a business in a beauty shop under contractual arrangement whereby the proprietor derives an income from such business.

"This meaning is given emphasis in the last sentence of Schedule 21. This Schedule of fees, not the basic fee of $10, is levied on beauty parlor colleges which engage in beauty parlor work 'for which a charge is made or material used is charged therefor.' "

■ We are of the opinion and hold that the said section contained in the General and Local Acts of. 1936–37, p. 257, Code 1940, Tit. 62, § 289, is not an amendment of the license schedule or general revenue law of the State of Alabama. Gen.Acts 1935, p. 447, Schedule 21; p. 474, Schedule 86, Code 1940, Tit. 51, §§ 473, 549. Since this Court has construed the provisions of Section 473 of T. 51, Code 1940, and the trial court has followed this construction in this case, the judgment of the trial court should be and it is hereby affirmed.

Affirmed.

GARDNER, C. J., and BROWN and FOSTER, JJ., concur.