COMMERCIAL FEDERAL SAVINGS AND LOAN ASSOCIATION; Weyerhauser Mortgage Company; and First American Title Insurance Company, Petitioners–Appellees,

and

Board of Assessment Appeals of the State of Colorado, Appellee,

v.

DOUGLAS COUNTY BOARD OF EQUALIZATION, Respondent–Appellant.

Nos. 92CA0470, 92CA0577, 92CA0578 and 92CA0579.

Colorado Court of Appeals, Div. V.

May 6, 1993.

Rehearing Denied June 3, 1993.

Certiorari Denied Jan. 31, 1994.

Barry J. Goldstein, Denver, for petitioners-appellees.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Larry A. Williams, First Asst. Atty. Gen., Denver, for appellee.

J. Mark Hannen, County Atty., Thomas W. McNish, Asst. County Atty., Castle Rock, for respondent-appellant.

Opinion by Judge BRIGGS.

In this consolidated appeal, respondent, Douglas County Board of Equalization (County), seeks review of four decisions of the Colorado Board of Assessment Appeals (BAA) reducing the Douglas County Assessor's valuation of vacant land owned by petitioners, Commercial Federal Savings and Loan Association (92CA0470), Weyerhauser Mortgage Company (92CA0577 & 92CA0579), and First American Title Insurance Company (92CA0578) (Taxpayers). The BAA entered an appearance as a named appellee. We affirm.

■ The County contends that the BAA committed an error of law by interpreting Colo.Sess.Laws 1990, ch. 277, § 39–1–103(14)(b) at 1688, to include developer's profit and overhead in the cost of development which may be deducted from the valuation of vacant land. We disagree.

That statute, as in effect at the time of the valuations in question, provided in relevant part:

> The assessing officers shall give appropriate consideration to the cost approach, market approach, and income approach to appraisal as required by the provisions of section 3 article X of the state constitution in determining the actual value of vacant land. When using the market approach to appraisal in determining the actual value of vacant land, assessing officers shall take into account, *but need not limit their consideration to,* the following factors: The anticipated market absorption rate, the size and location of such land, the *cost of development,* any amenities, any site improvements, access, and use. (emphasis supplied)

In each case, the County had assessed the vacant land without including any deduction for developer's overhead and profit based on its conclusion that cost of development did not include such "soft," or "indirect," costs. In each case, the BAA reached a contrary result and, therefore, provided the Taxpayers with a reduction in the property's value in the amount of 20% for developer's overhead and profit.

After the BAA made the four rulings in question, the General Assembly amended § 39–1–103(14)(b), effective June 2, 1992. That amended statute, § 39–1–103(14)(b), C.R.S. (1992 Cum.Supp.), provides in relevant part:

> When using the market approach to appraisal in determining vacant land *as of the assessment date,* assessing officers shall take into account, but need not limit their consideration to, the following factors: The anticipated market absorption rate, the size and location of such land, the *direct costs* of development.... When using anticipated market absorption rates, the assessing officers shall use appropriate discount factors in determining the present worth of vacant land until eighty percent of the lots within an approved plat have been sold and shall include all vacant land in the approved plat. *For purposes of such discounting, direct costs of development shall be taken into account .... For purposes of this paragraph (b), no indirect costs of development, including, but not limited to, costs relating to marketing, overhead, or profit, shall be considered or taken into account.* (emphasis supplied to reflect amendments)

The County contends that the General Assembly's 1992 amendment to the statute, which expressly prohibits consideration of indirect costs, including but not limited to marketing, overhead, or profit, clarifies the prior statute and indicates that the BAA's interpretation of the former statute was in error. We are not persuaded.

■ When a statute is amended, it is presumed that the General Assembly intended to change the law. *Charnes v. Lobato,* 743 P.2d 27 (Colo.1987). This rule leads to the conclusion that the BAA's interpretation of the former statute was correct.

■ We recognize that an explicit subsequent legislative *declaration* concerning the intent of an earlier statute is entitled to considerable weight. *See People v. Holland,* 708 P.2d 119 (Colo.1985). However, a subsequent legislative amendment may be considered in construing a former statute only to the extent the intent of the legislature can be ascertained from the amendment. *See* 2B N.

Singer, *Sutherland Statutory Construction* § 49.11 (5th ed. 1992).

Here, it is not clear from the amendment itself whether it was intended as a clarification or a change. However, other statutory provisions in effect at the time the former statute was enacted and relating to costs contained qualifying terms such as direct and indirect costs. *See* § 34–1–105, C.R.S. (1984 Repl.Vol. 14); § 23–60–306(3)(e), C.R.S. (1988 Repl Vol. 9); § 24–34–105(2)(a), C.R.S. (1988 Repl.Vol. 10A); § 25–2–121(2)(b)(I), C.R.S. (1989 Repl.Vol. 11A); § 24–113–104(1)(a), C.R.S. (1988 Repl.Vol. 10B). Under such circumstances, we presume that, at the time of enactment of this statute, the General Assembly was aware such qualifying language was available, and it could have added a similar qualification if that had been its intent. *See Scholz v. Metropolitan Pathologists, P.C.,* 851 P.2d 901 (Colo.1993); *People v. Guenther,* 740 P.2d 971 (Colo.1987). The General Assembly chose not to do so.

■ In addition, when courts are faced with a problem of statutory construction, in most circumstances, deference should be given to the interpretation of the statute by the officer or agency charged with its administration. *Lucero v. Climax Molybdenum Co.,* 732 P.2d 642 (Colo.1987); *see State Board of Equalization v. American Airlines,* 773 P.2d 1033 (Colo.1989).

Here, we take judicial notice from other appeals of the fact that prior to the amendment the BAA construed cost of development to include indirect costs such as developer's overhead and profits. *See Huerfano Valley Ditch & Reservoir Co. v. Hinderlider,* 81 Colo. 468, 256 P. 305 (1927). Also, the BAA's construction is consistent with other authoritative interpretations. *See* E. Friedman, *Encyclopedia of Real Estate Appraising* 738 (3d ed. 1978).

■ Moreover, any ambiguities in a statute pertaining to taxes should be construed in favor of the taxpayer. *Transponder Corp. of Denver v. Property Tax Administrator,* 681 P.2d 499 (Colo.1984).

■ The County points out that the BAA in another case since the enactment of the amendment concluded that the intent of the General Assembly was to clarify rather than change the statute and that we should defer

to this interpretation. However, while we may give deference to an agency's interpretation of a statute it administers, administrative interpretations are most useful to the court when the statutory language is susceptible to more than one reasonable interpretation and the subject involved calls for the exercise of technical expertise which the agency possesses. *See El Paso County Board of Equalization v. Craddock*, 850 P.2d 702 (Colo.1993). There is no similar basis for deference to an agency's unsupported conclusion regarding the intent of the General Assembly in amending a statute. *Cf. Travelers Indemnity Co. v. Barnes*, 191 Colo. 278, 552 P.2d 300 (1976).

■ The County next asserts that the Property Tax Administrator's "manuals" interpret cost of development of vacant land to exclude indirect costs and that we should defer to this interpretation. It cites 3 Assessors Reference Library, *Land Valuation Manual* § VII at 7.44–7.48 (revised 1–91) for the proposition that the Property Tax Administrator did not authorize a county assessor to consider a developer's profit and overhead in the valuation of vacant land.

The section in question discusses various methods for valuing vacant land and recommends that "soft" costs, including overhead and profit, be restricted to site improvements installed on the assessment dates when using the development cost build-up method but that such soft costs should be allocated to the uninstalled site improvements when using the development cost deduction method. The provision neither states nor implies an absolute restriction on consideration of soft costs such as overhead and profit when valuing vacant land.

We therefore conclude that the BAA did not commit an error of law in permitting deductions for developer's overhead and profit as part of the cost of development under the former statute.

The judgments are affirmed.

RULAND and ROTHENBERG, JJ., concur.