**VAIL ASSOCIATES, INC.,**
Petitioner–Appellee,

v.

**EAGLE COUNTY BOARD OF COUNTY COMMISSIONERS, acting as the Eagle County Board of Equalization, Respondent–Appellant,**

**and Board of Assessment Appeals of the State of Colorado, Appellee.**

No. 97CA0265.

Colorado Court of Appeals,
Div. I.

Oct. 29, 1998.

Rehearing Denied Nov. 27, 1998.

Certiorari Granted Sept. 13, 1999.

Holme Roberts & Owen, LLP, Stephanie M. Tuthill, Denver, Colorado, for Petitioner–Appellee.

James R. Fritze, County Attorney, Eagle, Colorado, Bob D. Slough, Cortez, Colorado, for Respondent–Appellant.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Mark W. Gerganoff, Assistant Attorney General, Denver, Colorado, for Appellee.

Opinion by Judge DAVIDSON.

Eagle County Board of County Commissioners, acting as the Eagle County Board of Equalization (BOE), appeals from the order of the Board of Assessment Appeals (BAA), granting the protest of Vail Associates, Inc. (Vail), and removing its possessory interest in federally exempt land from the 1996 tax roll. We affirm.

In May 1996, the Eagle County assessor sent a notice of valuation assessing Vail's possessory interest in federal land which it used under non-exclusive special use permits. Vail appealed the notice of valuation to the BOE and asserted that §39–3–136, C.R.S. 1998, enacted in 1996, had repealed Colo. Sess. Laws 1989, ch. 325, § 39–3–135 at 1480,

which, with certain exceptions, allowed the taxation of possessory interests. Vail argued that § 39–3–136 precluded the taxation of possessory interests in the absence of a specific statutory provision directing such tax. The BOE concluded that § 39–3–136 was unconstitutional and denied Vail's protest. Vail appealed the denial to the BAA.

Following a hearing, the BAA determined that it did not have the authority to determine the constitutionality of § 39–3–136. It also determined that that statute exempted possessory interests in exempt property from taxation. Recognizing that federally owned land is exempt from taxation by the state, the BAA granted Vail's protest and ordered the BOE to remove Vail's possessory interest from the tax rolls.

## I.

■ As a threshold matter, Vail contends that the BOE lacks standing to dispute the constitutionality of § 39–3–136. We disagree.

Section 30–11–105.1, C.R.S.1998, provides that:

[A]ny county or county officer shall have standing in district court to defend any action brought against such county or county officer by contesting the constitutionality of a statute underlying such action. . . .

Here, the BOE is seeking review of the BAA's order directing it to remove Vail's possessory interest from the tax rolls based on the language of § 39–3–136. The BOE, defending its decision to assess Vail's possessory interest before the BAA and now on appeal, challenges the constitutionality of § 39–3–136. Vail argues that, although § 30–11–105.1 confers standing on a county or county officer to challenge the constitutionality of a statute in order to defend an action brought in district court, it does not confer standing on the BOE because this action was directly appealed to this court. We disagree.

■ A political subdivision of the state possesses only those powers expressly conferred by the constitution and statutes and such incidental powers reasonably necessary

to carry out its express powers. *Board of County Commissioners v. Love*, 172 Colo. 121, 470 P.2d 861 (1970).

■ Although, in general, a subordinate political subdivision of a state does not have standing to challenge the constitutionality of a statute directing the performance of its duties, an exception to this general rule exists if the political subdivision is granted the express or implied authority to do so. *Romer v. Fountain Sanitation District*, 898 P.2d 37 (Colo.1995).

In *Mesa Verde Co. v. Montezuma County Board of Equalization*, 831 P.2d 482 (Colo. 1992), the supreme court held that the BOE, as a political subdivision of the state, did not have standing to challenge the constitutionality of statutorily created tax exemptions.

In response to that decision, the General Assembly enacted § 30–11–105.1, to confer standing on the BOE to challenge the constitutionality of a statute. Although the statute refers only to actions in district court, it is apparent that the intent of § 30–11–105.1 is to allow the BOE to defend its actions based on the constitutionality of the statutes under which it operates. Thus, if the BOE must defend its actions in another forum, standing to challenge the constitutionality of a statute is necessarily implied in this grant of authority.

The interpretation of § 30–11–105.1 urged by Vail, that the BOE has standing only in district court but in no other proceeding, would lead to an absurd result. Such interpretation would preclude a political subdivision from challenging the constitutionality of a statute if a taxpayer chose to appeal an adverse decision to the BAA rather than in district court. The taxpayer would be able to avoid a constitutional challenge and would preclude the agency from asserting a defense based on such challenge merely by its choice of forum. *See AviComm, Inc. v. Public Utilities Commission*, 955 P.2d 1023 (Colo.1998) (intent of legislature will prevail over literal interpretation of statute that leads to absurd result).

## II.

The BOE contends that § 39–3–136 creates an exemption from taxation for possessory interests without express authorization under the constitution and that, therefore, the statute is unconstitutional and the BAA order premised thereon is void. In support of this contention, the BOE argues that, under the Colorado constitution, the statutes enacting and implementing the taxation scheme, and the supreme court's decision in *Mesa Verde Co. v. Montezuma County Board of Equalization*, 898 P.2d 1 (Colo. 1995), possessory interests are real property subject to taxation. However, we conclude that the statute is constitutional under the General Assembly's plenary power of taxation and that, therefore, possessory interests are not considered real property under the statutes defining such and, thus, are not subject to taxation.

### A.

Colo. Const. art. X, § 3, requires taxation of "all real and personal property" and empowers the General Assembly to determine the subjects of taxation and the mode and method of collecting taxes as long as its actions are within constitutional restraints. *See City & County of Denver v. Security Life & Accident Co.*, 173 Colo. 248, 477 P.2d 369 (1970) (constitution is not self-executing but requires implementing legislation).

The constitution further provides that certain classes of property shall be exempt from taxation. Colo. Const. art. X, §§ 3(1)(c) & (d), 4, & 5. The General Assembly is prohibited from creating or eliminating exemptions. Colo. Const. art X, §6; *Mesa Verde Co. v. Montezuma County Board of Equalization, supra*.

Prior to 1975, most possessory interests were not taxed. In 1975, the General Assembly enacted legislation imposing a property tax on possessory interests, subject to certain enumerated exceptions. *See* Colo. Sess. Laws 1975, ch. 342, § 39–3–112 at 1462 (recodified at Colo. Sess. Laws 1989, ch. 325, § 39–3–135 at 1480).

The possessory interest statute was amended by the General Assembly several times to add other exemptions. *See* Colo. Sess. Laws 1976, ch. 155, § 39–3–112 at 766; Colo. Sess. Laws 1979, ch. 366, § 39–3–112 at 1407. The imposition of such tax generated substantial litigation. *See United States v. Colorado*, 627 F.2d 217 (10th Cir.1980) (tax imposed on private company was not tax on its possessory interest but on federal property and, therefore, illegal), *aff'd sub nom. Jefferson County v. United States*, 450 U.S. 901, 101 S.Ct. 1335, 67 L.Ed.2d 325 (1981); *Mesa Verde Co. v. Board of County Commissioners*, 178 Colo. 49, 495 P.2d 229 (1972) (upholding ad valorem tax on possessory interest in federal property); *Southern Cafeteria, Inc. v. Property Tax Administrator*, 677 P.2d 362 (Colo.App.1983) (tax on possessory interest in federal property illegal if no showing of indicia of ownership of such interest). As a result, the number of possessory interests taxed under the statute became fewer.

The supreme court, in *Mesa Verde Co. v. Montezuma County Board of Equalization, supra*, addressed the effect of the statutorily created exemptions to the taxation of possessory interests under § 39–3–135. The court determined that, subject to certain exceptions, under § 39–3–135, possessory interests were taxable property. It also acknowledged that Mesa Verde's interest was exempt under the exemptions created by the statute. However, the court concluded, because the exemptions created under § 39–3–135 were not expressly authorized by the constitution and, therefore, were unconstitutional, Mesa Verde's possessory interest in federally owned lands was taxable property. The court further noted that Mesa Verde's possessory interest also would be taxable under § 39–1–111, C.R.S.1998, which requires tax to be assessed on all real property according to the definition of real property found under §§ 39–1–102(14)(a) & (c) and § 39–1–102(16), C.R.S.1998.

In response to this decision, the General Assembly enacted § 39–3–136, repealing § 39–3–135, expressing its intent that possessory interests in exempt property were not real property subject to taxation, and attempting to clarify that the scope of the definition of real property under the statutes does not encompass possessory interests.

**B.**

The BOE first argues that, under the constitution, only certain, specifically enumerated properties may be exempted from taxation, and that any attempt by the General Assembly to enlarge that list is unconstitutional. We agree that this is so. However, we disagree that this prohibition precludes the General Assembly from establishing, by the exercise of its powers to define terms and classify property, those properties subject to taxation.

Under Colo. Const. art. X, § 6, the General Assembly is prohibited from both creating tax exemptions not authorized by the constitution or eliminating exemptions expressly enumerated by the constitution. *See Mesa Verde Co. v. Montezuma County Board of Equalization, supra.*

■ The constitution is not a grant of authority to the General Assembly, but is an instrument of limitation of authority. Therefore, in the absence of an express or necessarily implied constitutional prohibition, the General Assembly has plenary powers of civil government. *Colorado State Civil Service Employees Ass'n v. Love,* 167 Colo. 436, 448 P.2d 624 (1968). Accordingly, although the constitution sets forth the boundaries within which property taxes are to be imposed, it is the General Assembly which enacts and implements the constitutional mandate that all property is to be taxed.

■ Thus, the assessment, levy, and collection of taxes are exclusively a legislative function to be exercised according to the general laws subject only to the *limitations* of the United States and Colorado Constitutions. The General Assembly has the discretion to determine questions of time, method, nature, purpose, and extent in respect to the imposition of taxes, the subjects upon which the taxing power is to be exercised, and the proceedings concerning taxation. Its exercise of discretion within constitutional limitations is not subject to judicial control. *Bartlett & Co. v. Board of County Commissioners,* 152 Colo. 388, 382 P.2d 193 (1963); *see also Carlile v. Pullman Palace Car Co.,* 8 Colo. 320, 7 P. 164 (1885) (imposition of tax is a legislative act subject to legislature's control).

■ Here, because the constitution sets forth the limits within which the General Assembly is to operate in establishing the tax scheme, there is no constitutional restriction against the General Assembly taking actions which are within its limits and do not exceed them. Classifying property for and determining the method of taxation is subsumed within this construct. Indeed, the General Assembly, in the discretionary exercise of its power, may choose to establish different classes of property and a different method for valuing each class if necessary in order to secure a just valuation. *Ames v. People ex rel. Temple,* 26 Colo. 83, 56 P. 656 (1899) (upholding method of valuing and apportioning railroad property located in more than one county even though certain property was thereby left untaxed).

■ Specifically, to carry out the constitutional requirement that all real property be taxed, the General Assembly is empowered to enact legislation that effectuates and implements the constitutional mandate. Included in this authority is the power to define, by statute, what real property is and is not. Therefore, unless and until a category of real property is defined and the method for collecting taxes on such property is enacted by the General Assembly, it cannot be taxed. Thus, the constitution, of itself, does not allow or prohibit the General Assembly from defining real property as long as that body recognizes and acts within the limits set forth therein. *See City & County of Denver v. Security Life & Accident Co., supra;* Colo. Const. art. X, § 20 (taxpayers may amend, by initiative, constitutional scope of General Assembly's authority to tax).

**C.**

■ We disagree with the BOE that § 39–3–136, which allows the taxation of possessory interests only upon the enactment of specific legislation directing such taxation, exceeds the scope of the General Assembly's authority to tax.

### 1.

First, insofar as the BOE implies that the General Assembly, by enacting § 39–3–136, overruled the supreme court's interpretation of the constitution in *Mesa Verde Co. v. Board of Equalization, supra,* we disagree. Contrary to the BOE's contention, the court did not determine that the constitution mandated the taxation of possessory interests. Instead, although the supreme court relied on the general rule that the creation of a tax exemption not authorized expressly by the constitution is prohibited, its decision was based solely on its interpretation of the statutes concerning possessory interests and real property.

### 2.

The BOE argues that, regardless of the General Assembly's expressed intent under § 39–3–136 that possessory interests in exempt property are to be subject to taxation only upon its express direction, the statute unconstitutionally creates an exemption for possessory interests.

Vail argues, to the contrary, that the General Assembly validly exercised its power to define the subjects of taxation and the method for collecting taxes. Therefore, Vail argues, the General Assembly, in enacting § 39–3–136, properly exercised its authority to define categories of property subject to taxation and effectively removed possessory interests from the definition of real property. We agree with Vail.

Section 39–1–102(16) mandates the taxation of "all property real and personal." And, § 39–1–111 authorizes imposition of property taxes against "all taxable property" in a county. Real property subject to taxation is defined under §§ 39–1–102(14), C.R.S. 1998, as:

all lands or interests in lands to which title or the right of title has been acquired from the government of the United States or from sovereign authority ratified by treaties entered into by the United States, or from the state [and]

. . . .

improvements.

Section 39–3–136 provides, in pertinent part, that:

[T]his section is intended to clearly state that possessory interests in exempt property shall be subject to property taxation only upon enactment of specific statutory provisions directing such taxation.

. . . .

The provisions of section 39–1–102(14)(a) and (14)(c) and section 39–1–106 do not direct the taxation of possessory interests in real property.

. . . .

Possessory interests in real or personal property that is exempt from taxation under this article shall not be subject to property taxation unless specific statutory provisions have been enacted that direct the taxation of such possessory interests.

Here, the General Assembly's intent that possessory interests are not considered real property subject to taxation clearly is expressed in § 39–3–136. However, the BOE notes that the General Assembly did not separately amend §§ 39–1–102(14) & 39–1–111. Thus, the BOE argues, the General Assembly, through § 39–3–136, cannot do by implication that which it chose not to do expressly.

Specifically, the BOE asserts, because the supreme court, in *Mesa Verde Co. v. Montezuma County Board of Equalization, supra,* determined that Mesa Verde's possessory interest met the definition of taxable property under §§ 39–1–102(14) & 39–1–111, and because the General Assembly failed to repeal or amend these statutes, they are still in effect. Therefore, the BOE argues, despite the enactment of § 39–3–136, §§ 39–1–102(14) & 39–1–111 still include possessory interests in the definition of real property. Thus, the issue presented here is whether § 39–3–136 effectively amends the definition of real property under §§ 39–1–102(14) & 39–1–111. We conclude that it does.

We do agree, as the BOE points out, that the General Assembly could have re-

pealed and amended § 39–1–102(14) or § 39–1–111 to change the definition of real property. However, it is not for a reviewing court to determine that the General Assembly could have addressed an issue in a different or "better" manner. Rather, the court's function is to uphold the intent of the General Assembly and determine whether a statute is constitutional. *See Kallenberger v. Buchanan*, 649 P.2d 314 (Colo.1982) (fundamental tenet of constitutional law is that courts do not approve or disapprove the wisdom of legislative decisions).

■ The appropriate construction of a statute is a question of law. *Wycon Construction Co. v. Wheat Ridge Sanitation District*, 870 P.2d 496 (Colo.App.1993).

■ In statutory construction, legislative intent is the polestar. *In re Estate of Hill*, 713 P.2d 928 (Colo.App.1985). Accordingly, a statute must be construed to give effect to the legislative purpose underlying its enactment and to achieve a just and reasonable result consistent with that purpose. *Snyder Oil Co. v. Embree*, 862 P.2d 259 (Colo.1993). A statute also is to be interpreted, if possible, to harmonize with and give meaning to other potentially conflicting statutes. *Gamble v. Levitz Furniture Co.*, 759 P.2d 761 (Colo.App.1988).

■ If a statute is ambiguous or if its intended effect is unclear, the reviewing court, in determining its meaning, may consider: 1) the object sought to be attained; 2) the circumstances in response to which the statute was enacted; 3) legislative history; 4) the common law or former statutes; 5) the consequences of a certain construction; 6) any administrative construction; and 7) the legislative declaration or purpose. *See* § 2–4–203, C.R.S.1998; *Holme, Roberts & Owen v. Industrial Claim Appeals Office*, 800 P.2d 1332 (Colo.App.1990).

In enacting § 39–3–136, the General Assembly properly recognized that the constitution does not allow the exemption of certain interests from a legislatively created classification of property. Additionally, the General Assembly recognized the constitutional limitation on its power to define the subjects of taxation, noting that it could not create a class of property to be taxed and then exempt certain members of that class. Because the General Assembly determined that the constitution requires that all or none of a class of property be subject to taxation, it decided that it simply would not create that class consisting of possessory interests. Hearings on S.B. 218, House Floor Debate, 60th General Assembly, Second Session (May 6, 1996); *see Mesa Verde Co. v. Montezuma County Board of Equalization, supra.*

In making this determination, the General Assembly noted the history underlying Colo. Const. art. X in establishing the state taxation scheme. The authors of the original constitution considered but did not expressly include the phrase "possessory interests" in Colo. Const. art. X, § 3, requiring the taxation of "all property, real and personal." *See Proceedings of the Constitutional Convention* 414, 483 (1875).

The General Assembly also determined that enacting § 39–3–136 and repealing § 39–3–135 would restore possessory interests to the status they historically had held of not being considered taxable real property. *See* Hearings on S.B. 218 before the Subcommittee of the Senate Agricultural Committee, 60th General Assembly, Second Session (March 28, 1996); Hearings on S.B. 218 before the Subcommittee of the Senate Appropriations Committee, 60th General Assembly, Second Session (April 23, 1996) (noting that constitutional provisions do not expressly authorize taxation of possessory interests and that, therefore, a statute authorizing such is needed before such interest may be taxed). *See also Carlile v. Pullman Palace Car Co., supra* (until method of assessing and collecting tax is imposed by legislative act, it does not exist).

The General Assembly further determined, properly, that because the constitution does not require the taxation of possessory interests, and because the General Assembly is vested with the authority to define and classify property to be taxed, the decision whether to include such interests in defining real property is left to its discretion. *See* § 39–3–136(1)(a), C.R.S.1998; *Ames v. People ex rel. Temple, supra* (General Assembly has discre-

tion to determine classes of property to be taxed).

Here, the language of § 39–3–136 reflects the General Assembly's plenary power under the constitution to establish and define the subjects of taxation and the method for collecting taxes on such property. The General Assembly did not act to exempt possessory interests from taxation. Instead, § 39–3–136 sets forth that, because neither the constitution nor the definition of real property under §§ 39–1–102(14) and 39–1–111 directs the taxation of possessory interests in exempt property, such taxation may be done only when the General Assembly exercises its power to do so. Because the power to define classes of property and to establish the method by which taxes are collected rests with the General Assembly, it did not exceed the scope of its authority in enacting § 39–3–136.

■ Moreover, the fact that § 39–3–136 may change the supreme court's interpretation of an existing statute, alone, does not demonstrate that the General Assembly has overstepped its authority. If a court misinterprets or misconstrues the intent of a legislature concerning a statute, there is nothing to prevent that body from correcting the error and making its intent clear. *See People ex rel. Juhan v. District Court,* 165 Colo. 253, 439 P.2d 741 (1968); *Commercial Federal Savings & Loan Ass'n v. Douglas County Board of Equalization,* 867 P.2d 17 (Colo. App.1993) (an explicit subsequent legislative declaration for the purpose of clarifying the intent of an earlier statute is entitled to considerable weight).

Therefore, the General Assembly, in a valid exercise of its authority, has declared that, in the absence of an express legislative directive to do so, possessory interests, including those in exempt property, are not encompassed by the statutory definition of real property under §§ 39–1–102(14) & 39–1–111. And, because possessory interests are not considered real property under this definition, they are not subject to taxation.

In reaching this determination on the facts before us, we do not consider whether the General Assembly, under § 39–3–136, may direct the taxation of selected possessory interests or expressly exempt others.

D.

■ Alternatively, the BOE argues that, even if the General Assembly may define real property so that it does not include possessory interests in exempt property, nevertheless, § 39–3–136 does not include the interest at issue here, a possessory interest in federally owned land exempt from state taxation under the Supremacy Clause. It argues that the language of § 39–3–136(2), C.R.S.1998, that "possessory interests in real or personal property that is exempt from taxation under this article" includes only property specifically exempted from taxation under article 3 of Title 39. We disagree.

Under the Supremacy Clause, federally owned lands are not subject to taxation by a state. U.S. Const. art. VI; *Mesa Verde Co. v. Montezuma County Board of Equalization, supra* (property owned by the United States is immune from state taxation). This exemption was not created by state statute and cannot be altered or exempted by the state.

To adopt the interpretation urged by the BOE of this phrase to exclude possessory interests in exempt lands simply because the lands are owned by the United States would lead to unequal treatment and defeat the constitutional mandate that taxes are to be imposed uniformly. *See* Colo. Const. art. X, § 3; *Denver Urban Renewal Authority v. Byrne,* 618 P.2d 1374 (Colo.1980) (tax burden must be uniform on same class of property).

The better interpretation of this language, in harmony with other statutes and to promote uniformity, is to view it in the context of the whole taxation scheme as set forth under the constitution and implemented through the statutes. Thus, because federally owned lands are exempt property under the Supremacy Clause, we conclude that under § 39–3–136, such lands also are considered exempt.

E.

■ Reading the statutory provisions as a whole, we conclude that real property is defined as all lands and interests in lands

that are not possessory interests in exempt property under the taxation scheme. And, applying that definition to the case before us, we further conclude that the BAA correctly ordered the BOE to remove Vail's possessory interest from the tax rolls.

Here, because Vail's interest in federal forest lands resulted from a lease with the United States, it is a possessory interest. As discussed, federal forest lands are exempt from taxation by the state under the Supremacy Clause. This exemption is recognized under § 39–3–136. Therefore, because Vail's possessory interest in exempt property is not considered real property, under § 39–3–136, it is not subject to taxation.

In light of this disposition, we need not address the other issues raised by the parties.

The order is affirmed.

Judge METZGER concurs.

Judge ROY concurs in part and dissents in part.

Judge ROY concurring in part and dissenting in part.

I agree with the majority with respect to the standing of the Eagle County Board of Equalization (BOE) to challenge the constitutionality of § 39–3–136, C.R.S.1998. I further agree with the majority that the constitution is not self-executing, but I respectfully dissent from the balance of the majority opinion.

The constitution requires that "[e]ach property tax levy shall be uniform upon all real and personal property not exempt from taxation." Colo. Const. art. X, § 3(1)(a). It then provides that certain types or classes of property shall be exempt from taxation. Colo. Const. art X, §§ 3(1)(c) and (d), 4, 5.

The statutes authorize an annual tax on all "taxable property." Section 39–1–111, C.R.S.1998. "Taxable property" is defined by statute as "all property, real and personal, not expressly exempted from taxation by law." Section 39–1–102(16), C.R.S.1998. "Real property" is defined by statute as "[a]ll lands or interests in lands . . . ." Section 39–1–102(14)(a), C.R.S.1998.

In 1975, the General Assembly, with specified exemptions, adopted a statute specifically authorizing the taxation of possessory interests in real property otherwise exempt from taxation which were held in connection with a business conducted for profit. Colo. Sess. Laws 1975, ch. 342, at 1462 (possessory interest statute).

In 1995, the supreme court held in *Mesa Verde Co. v. Montezuma County Board of Equalization*, 898 P.2d 1 (Colo.1995) (*Mesa Verde II* ) that a concessionaire's contractual right to use national park land was taxable as real property. In reaching this conclusion, the court relied on and construed §§ 39–1–111 (authority to tax), 39–1–102(16) (definition of taxable property), and 39–1–102(14)(a) (definition of real property). In addition, the *Mesa Verde II* court held that an exemption from taxation contained in the possessory interest statute—which would have exempted the concessionaire's interest—was unconstitutional because it was not specifically authorized by Article X of the Colorado Constitution.

In 1996, the General Assembly repealed the possessory interest statute and adopted § 39–3–136, which provides:

The general assembly hereby finds and declares that:

> (a) Section 3 of article X of the state constitution does not require the taxation of possessory interests, which are rights to use property that do not constitute the substantial equivalent of complete ownership of the property, in land, improvements, and personal property that are otherwise exempt from property taxation, absent express statutory authorization;

> (b) This position is based, in part, upon the written proceedings of the 1875 Colorado constitutional convention, which reflect that the first draft of section 3 of article X of the state constitution expressly provided for the taxation of 'all property, real, personal or possessory', while the final version of this provision adopted by the constitutional convention provided only for the taxation of 'all

property, real and personal' and did not refer to possessory property;

(c) In the opinion issued on April 24, 1995, entitled *Mesa Verde Company v. The Montezuma County Board of Equalization and The Montezuma County Assessor, and The Property Tax Administrator of The State of Colorado ('Mesa Verde II'),* 898 P.2d 1 (Colo.1995), the Colorado supreme court held that certain possessory interests in land are 'real property' within the meaning of section 39–1–102(14)(a) and are therefore subject to property taxation;

(d) If, based upon the supreme court's decision in *Mesa Verde II,* possessory interests are taxable, a variety of possessory interests, such as grazing leases and permits on government land or government employees' parking spaces in government-owned garages, become subject to property taxation and could be valued by different methods;

(e) Due to the supreme court's decision in *Mesa Verde II,* the property tax treatment of possessory interests in exempt properties needs to be addressed to ensure the uniformity required by section 3 of article X of the state constitution;

(f) Subsection (2) of this section is intended to clearly state that possessory interests in exempt property shall be subject to property taxation only upon enactment of specific statutory provisions directing such taxation;

(g) The provisions of section 39–1–102(14)(a) and (14)(c) and section 39–1–106 do not direct the taxation of possessory interests in exempt properties; and

(h) Subsection (2) of this section shall not apply to and shall not be construed to affect or change the taxation of equities in state lands pursuant to section 39–5–106, the taxation of mines, quarries, or minerals, including hydrocarbons, pursuant to section 39–1–102(14)(b), articles 6 and 7 of this title, and any other article of this title, or the taxation of public utilities pursuant to article 4 of this title.

(2) Possessory interests in real or personal property that is exempt from taxation under this article shall not be subject to property taxation unless specific statutory provisions have been enacted that direct the taxation of such possessory interests.

This statute is remarkable in at least two respects: (1) the General Assembly announced its interpretation of the Colorado Constitution, with a rationale; and (2) the General Assembly construed, without a rationale and without amending it, a statute adopted by a previous General Assembly, in a manner contrary to the previously announced opinion of the supreme court in *Mesa Verde II.*

## I.

I conclude, following the supreme court's opinion in *Mesa Verde II,* that Vail's possessory interest in land owned by the United States is taxable under § 39–1–111.

The BOE's argument is based on language contained in a footnote in *Mesa Verde II* in which the supreme court indicated that the concessionaire's real property interest would be taxable without the possessory interest statute. This language stated, in pertinent part:

> We also note that because Mesa Verde's possessory interest meets the definition of taxable property under § 39–1–102(16), even if Mesa Verde's interest were not taxable under any provision of § 39–3–135 [possessory interest statute], it is taxable under § 39–1–111. Section 39–1–111 authorizes the imposition of property taxes against all 'taxable property' in the county.

*Mesa Verde II, supra* (fn.17).

In my view, the taxation of possessory interests in land owned by the United States does not rely on the footnote, but, rather, is fully contained and explained in the holding of the supreme court. In other words, the footnote makes explicit what was implicit in the court's holding.

In *Mesa Verde II,* the supreme court held that a concessionaire's use and occupancy of property owned by the United States was real property within the meaning of § 39–1–102(14)(a), and was taxable pursuant to § 39–1–111. In so concluding, the supreme court

did not rely on the possessory interest statute, and therefore, the General Assembly's subsequent repeal of the possessory interest statute has no impact on the rationale or holding of *Mesa Verde II* in that regard.

Vail maintains that the General Assembly has, in essence, reversed *Mesa Verde II* by the adoption of § 39–3–136(1)(g), C.R.S.1998, which provides that § 39–1–102(14)(a) and (c), C.R.S.1998, do not *direct* the taxation of possessory interests in tax exempt properties. Vail's assertion is, in my view, untenable.

The General Assembly did not amend the language contained in § 39–1–102(14) with the adoption of § 39–3–136(1)(g), but merely offered its construction thereof for the express purpose of legislatively overruling the supreme court's holding in *Mesa Verde II.* In addition, it did so in its findings and declarations, not in the operative portion of the legislation. Thus, the adoption of § 39–3–136(1)(g), at best, creates a conflict between the General Assembly and the supreme court as to the meaning and application of § 39–1–102(14).

Vail contends that § 39–1–136(1)(g) "clarifies" the meaning of the definition of real property contained in § 39–1–102(14). Again, I disagree.

Statutes require construction only if they are ambiguous. *Bloomer v. Board of County Commissioners,* 799 P.2d 942 (Colo.1990). In *Mesa Verde II,* the supreme court applied §§ 39–1–102(14) and 39–1–111 without any indication that it considered the statutes ambiguous.

Even if one assumes an ambiguity, however, the purpose of statutory construction is to ascertain and give effect to the legislative intent. *Farmer's Group, Inc. v. Williams,* 805 P.2d 419 (Colo.1991). The legislative intent to be ascertained is that of the *enacting* legislature. *Colorado Public Interest Research Group, Inc. v. Train,* 507 F.2d 743 (10th Cir.1974), *rev'd on other grounds,* 426 U.S. 1, 96 S.Ct. 1938, 48 L.Ed.2d 434 (1976).

The construction of statutes is a question of law, not fact, and is entrusted to the courts. *Fogg v. Macaluso,* 892 P.2d 271 (Colo.1995); *Nicholas v. North Colorado*

*Medical Center, Inc.* 902 P.2d 462 (Colo.App. 1995), *aff'd sub nom. North Colorado Medical Center, Inc. v. Committee on Anticompetitive Conduct,* 914 P.2d 902 (Colo.1996).

While it is common for a legislative body to make findings and declarations and announce both its intent and purpose to assist in the interpretation of the statute being adopted, it is extremely rare for a legislative body to offer its construction of a statute adopted by one of its predecessors. It is generally held that such a legislative interpretation is invalid as the construction of statutes is a judicial function. *Nelson v. Brown,* 242 Ala. 515, 7 So.2d 572 (1942); *Cutrona v. Wilmington,* 14 Del.Ch. 434, 127 A. 421 (1924); *Commonwealth ex rel. Roney v. Warwick,* 172 Pa. 140, 33 A. 373 (1895); *Titusville Iron–Works v. Keystone Oil Co.* 122 Pa. 627, 15 A. 917 (1888); *see also* 2A N. Singer, *Sutherland on Statutory Construction* § 45.03 at 18 (5th Ed.1992); Romero, *Interpretive Directions in Statutes,* 31 Harv. J. On Legislation 211 at 222–23 (1994–95).

I recognize that statements by a General Assembly that its amendment to a statute is for the purpose of clarifying, not changing, a statute is accorded considerable weight even though such does implicitly represent an interpretation of the statute. *See Commercial Federal Savings & Loan Ass'n v. Douglas County Board of Equalization,* 867 P.2d 17 (Colo.App.1993); *Portofino Corp. v. Board of Assessment Appeals,* 820 P.2d 1157 (Colo. App.1991). In those instances, however, the operative statute is, in fact, amended and the General Assembly is expressing its present intent.

Therefore, even though it is apparent that the General Assembly wished and intended to reverse the decision of the supreme court in *Mesa Verde II* and that it had the power to do so by amending either § 39–1–102(14) or §39–1–111, or both, I conclude that I am bound by the holding of the supreme court in *Mesa Verde II.*

II.

I further conclude that § 39–3–136(2), C.R.S.1998, is unconstitutional on its face, as

it creates an exemption from taxation not enumerated in the state constitution.

Article 10, Section 6 of the Colorado Constitution provides that "[a]ll laws exempting from taxation property other than that specified in this article shall be void."

In *Mesa Verde II,* the supreme court held that provisions of § 39–3–135 which exempted some possessory interests in tax exempt property held for profit were unconstitutional because the specified exemptions were not authorized by the constitution. Section 39–3–136(2) provides that possessory interests in tax exempt property shall not be subject to taxation without specific legislative authorization.

The analysis of the supreme court in *Mesa Verde II* did not rely on the repealed § 39–3–135. It relied instead on §§ 39–1–111 and 39–1–102(14), neither of which has been repealed nor amended.

Vail argues that the Colorado Constitution does not mandate the taxation of possessory interests. This argument is premised, in large part, on the history of taxation and the proceedings of the constitutional convention. While I agree that the constitution does not mandate the taxation of possessory interests, I conclude that the plain meaning of the constitution permits the taxation of possessory interests.

Prior to the adoption of the constitution, a tax was imposed on improvements installed by private parties on public land as though the private party owned the underlying land. Colo. Sess. Laws 1874, at 226–27. At the constitutional convention in 1875, the first draft of what later became Colo. Const., art. X, § 3, provided:

> All taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws which shall prescribe such regulations as shall secure a just valuation for taxation of all property, real, personal or possessory....

*Proceedings of the Constitutional Convention* 414 (1907).

After the convention resolved itself to the committee of the whole, the word "possessory" was deleted from the draft, leaving the operative phrase as "all real and personal property not exempt from taxation under this article." It is the deletion of "possessory" during the deliberations of the constitutional convention upon which Vail relies in arguing, and the General Assembly in finding, that the term "real property" as used in the constitution does not include possessory interests in real property.

If there is an ambiguity in the constitution, the cardinal rule of construction is to construe that instrument in accordance with the intention of the enacting body. The Colorado Constitution was drafted by a constitutional convention and was submitted to, and adopted by, the voters at an election held March 14, 1876. *See* Enabling Act § 5. Therefore, the goal of construing the constitution is to ascertain, if possible, the intention or understanding of the electorate and the proceedings of the constitutional convention are to be resorted to only when all other guides fail. *In re Senate Resolution No. 2 Concerning Constitutionality of House Bill No. 6,* 94 Colo. 101, 31 P.2d 325 (1933).

The proceedings of the constitutional convention, however, have been held to be of no assistance in interpreting the language of a constitution adopted by the electorate. *Alexander v. People,* 7 Colo. 155, 2 P. 894 (1884); *but see Schwartz v. People,* 46 Colo. 239, 104 P. 92 (1909)(courts may refer to proceedings of constitutional convention to ascertain intent in construing an ambiguous provision of the constitution).

Words used in constitutions are to be given their natural and popular meaning by which they are generally understood by the people who adopted them. *In re Senate Resolution No. 2 Concerning Constitutionality of House Bill No. 6, supra; Prior v. Noland,* 68 Colo. 263, 188 P. 729 (1920).

Perhaps the more notable treatises on the interpretation of constitutions states:

> In the first place, then, every word employed in the Constitution is to be expounded in its plain, obvious and common sense meaning, unless the context furnishes some ground to control, qualify, or enlarge it. Constitutions are not designed

for the meta-physical or logical subtleties, for niceties of expression, for critical propriety, for elaborate shades of meaning, or for the exercise of philosophical acuteness or judicial research. They are instruments of a practical nature founded on the common business of human life, adapted to common wants, designed for common use, and fitted for common understandings. The people make them, the people adopt them, the people must be supposed to read them, with the help of common-sense, and cannot be presumed to admit in them any recondite meaning or extraordinary gloss.

1 J. Story, *Story on the Constitution* § 451 at 345 (5th ed. 1891).

"Real property" is, and has been, defined as:

Land, and generally whatever is erected or growing upon or affixed to land. *Also rights issuing out of, annexed to, and exercisable within or about land.* A general term for lands, tenements, and hereditaments; property which, on the death of the owner intestate, passes to his heir.

*Blacks Law Dictionary* 1218 (6th ed.1990)(emphasis added).

At the time of the Constitutional Convention, the territorial legislature defined "real estate" for ad valorem tax purposes as:

Real estate for purposes of taxation shall include all lands within this Territory to which title has been acquired from the government of the United States, and the buildings, fixtures and other improvements thereon, including quarries, mineral, mineral springs and wells in, on, or under the same, and all rights and privileges appertaining thereto.

Colo. Sess. Laws 1870, at 88.

Later, the General Assembly added the following statement to the definition:

And also all buildings, fixtures and improvements made or owned by any person or persons upon public land in cases where such buildings, fixtures and improvements would be part of the real estate if the owner thereof had the fee simple estate in such land.

Colo. Sess. Laws 1874, at 226–27.

The present statutory definition of "real property," which closely parallels the common law definition, has remained essentially unchanged since at least 1901. *See* Colo. Sess. Laws, 1901, ch. 3, § 13 at 45. The present definition states:

All lands or interests in lands to which title or the right of title has been acquired from the government of the United States or from sovereign authority ratified by treaties entered into by the United States, or from the state; . . . .

Section 39–1–102(14)(a), C.R.S.1998.

In my view, the plain meaning of the term "real property" as used in the constitution includes possessory interests. Therefore, possessory interests are taxable under the plain meaning of the constitution. They are not, however, taxed by the constitution.

The constitution is not self-executing. *City & County of Denver v. Security Life & Accident Co.*, 173 Colo. 248, 477 P.2d 369 (1970)(taxation of a possessory interest in personal property titled in a national bank which was tax exempt but leased to a private party cannot be taxed absent implementing legislation).

The supreme court held in *Mesa Verde II* that §§ 39–3–102(14) and 39–1–111 were sufficient, without more, to impose a property tax on the possessory interest in land owned by the United States. That being the case, § 39–3–136(2), like the repealed possessory interest statute, creates an exemption from taxation not authorized by the constitution and is, therefore, in my view, unconstitutional. Colo. Const. art 3, § 6; *Mesa Verde II.*

### III.

I further conclude that § 39–3–136(2) does not apply to possessory interests in land owned by the United States.

Section 39–3–136(2) provides, in pertinent part:

Possessory interests in real or personal property that is exempt from taxation *under this article* shall not be subject to

property taxation unless specific statutory provisions have been enacted that direct the taxation of such possessory interests. (emphasis added)

According to the plain language of the statute, a possessory interest in land which is tax-exempt by virtue of a statute shall not be subject to taxation absent specific statutory authorization. At the outset, I would note that the General Assembly is powerless either to create or destroy a property tax exemption. Colo. Const. art. 10, § 6. Land is either exempt from taxation under the constitution or it is taxable.

Here, the land is owned by the United States and is exempt from taxation by the Supremacy Clause, not by the Colorado Constitution or state statute. *See McCulloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819) (states may not tax federal property without congressional consent); *see also* Colorado Enabling Act § 4 (prohibits taxation of lands belonging to the United States).

Thus, applying the statute as written leads me to conclude that Vail's possessory interests in land owned by the United States are not within the purview of § 39–3–136(2).

### IV.

In addition, though not addressed by the majority, I would reject Vail's contention that, because the BOE did not tax other holders of possessory interests in the county, the BOE's taxation of Vail's possessory interest violates the Equal Protection Clauses of the Colorado and United States Constitutions. Therefore, Vail argues, it should not be compelled to pay the tax.

In *Bishop v. Colorado State Board of Assessment Appeals,* 899 P.2d 251 (Colo.App. 1994), property owners challenged the assessments assigned to their individual lots. The owners did not dispute the dollar valuation of their individual lots; rather, in an argument similar to Vail's contention here, they argued that because other similar lots in the same subdivision had been undervalued, the assessed value of their lots should be reduced to equal the assessed value of the undervalued lots. A division of this court disagreed, and, relying at least in part on the undisputed correctness of the valuation, held that the property owners were not entitled to reductions in the tax assessments. *See also Crocog Co. v. Arapahoe County Board of Equalization,* 813 P.2d 768 (Colo.App.1990) (holding that property owner was not entitled to assessment reduction, even though similar property was assessed at much lower rate).

Although *Bishop* and *Crocog* were decided in the context of assessments, I find their reasoning persuasive, and would adopt it here. If the BOE has wrongfully failed to tax other possessory interests within the county, then the proper remedy is not for Vail to be relieved of its tax burden, but for the other possessory interest holders to be appropriately taxed. *Cf. Crocog Co. v. Arapahoe County Board of Equalization, supra,* 813 P.2d at 771 ("[A] countywide adjustment to conform all similarly situated property ... to one erroneous assessment in that county would undermine the very principles of statewide equalization upon which [property owner] relies.").

Accordingly, I would reverse the order of the BAA and remand the matter with orders to reinstate the subject property interest to the tax warrant.